**MISSOURI PUBLIC SERVICE CO. v. CITY OF CONCORDIA, MO., et al.**

No. 2445.

District Court, W. D. Missouri, W. D.

Sept. 19, 1934.

**2**

A. Z. Patterson and D. C. Chastain (of Sparrow, Patterson, Chastain & Graves), both of Kansas City, Mo., for plaintiff.

Ike Skelton, of Lexington, Mo., for defendants City and Board of Aldermen.

Roy McKittrick, Atty. Gen., for defendant Smith, State Auditor.

REEVES, District Judge.

The motion of the defendants to dismiss alleges as grounds, "Because said bill does not state any matter of equity entitling plaintiff to the relief prayed for, nor are the facts as stated sufficient to entitle plaintiff to any relief against these defendants."

The bill filed by plaintiff avers substantially that it is engaged in generating, transmitting, distributing, and supplying electricity to cities, towns, and sundry counties in the state of Missouri and the inhabitants of said state. For that purpose it owns and operates many distributing systems within the state. For these purposes, "it has been authorized by the State of Missouri, through orders and certificates of convenience and necessity issued by the Public Service Commission of said State, to construct, own, operate and maintain its plants, facilities and systems in each of the municipalities in which it renders service, and in the districts and territory adjacent to such municipalities, and it possesses valid and lawful operating rights in said municipalities and territories. All of the property owned and business done by the plaintiff is wholly within the State of Missouri, and it is not engaged in interstate business."

These averments are followed by appropriate allegations that it is carrying on its business at Concordia in the state of Missouri, and that it has a valuable plant and operating facilities at that place. These are followed by averments to the effect that the city of Concordia, through its officials, has planned the construction of a municipal plant for performing the same service as that now being performed and rendered by plaintiff.

In order to finance the project undertaken by the city, and as a necessary part of the plan to carry out such objective and project, an arrangement has been made with the Administrator of the Federal Emergency Administration of Public Works at Washington, D. C., for the advancement of funds in the sum of $47,000. Of this amount $30,000 is upon the basis of a loan and $17,000 is a gift. This is a necessary part of the financial arrangement perfected by the city in order to carry out its project.

The plaintiff challenges the validity of such arrangement, as well as directing a challenge against other portions of the financial plans adopted by the city for the construction of a municipally owned plant.

The parties in their briefs have limited the questions to be considered to that of the financial aid about to be extended by the Federal Emergency Administration of Public Works.

Plaintiff alleges in its bill that it has an interest, both as a franchise holder and as a taxpayer, in what it alleges to be an unlawful undertaking by the defendants, and that the construction of a municipally owned plant under such circumstances would be violative of its rights under the Fourteenth Amendment to the Constitution of the United States, and that, moreover, the aid about to be granted by the United States government, through the Federal Emergency Administration of Public Works is illegal, unconstitutional, and void as beyond the national power under the Constitution.

Other matters will be discussed in the course of this memorandum opinion.

1. At the outset, the defendants challenge the jurisdiction of this court upon the ground that no federal question is involved.

The defendants particularly say that the plaintiff merely states a conclusion when it says that "it possesses valid and lawful operating rights in said municipalities and territories."

The plaintiff's bill contains far broader allegations than that mentioned by counsel for the defendants.

In the case of Frost v. Corporation Commissioner of Oklahoma, 278 U. S. 515, loc. cit. 519 and 520, 49 S. Ct. 235, 237, 73 L. Ed. 483, it was held that operators of cotton gins, which had been declared public utilities by the laws of Oklahoma, owned a valuable franchise where such operators held permits from the corporation commissioner of the state. The court said: "It follows that the right to operate a gin and to collect tolls therefor, as provided by the Oklahoma statute, is not a

mere license, but a franchise, granted by the state in consideration of the performance of a public service, and as such it constitutes a property right within the protection of the Fourteenth Amendment."

█ It would follow that, upon the clear and explicit allegations of the bill in this case, the plaintiff has and enjoys a property right within the city of Concordia, and that such property right is within the protection of the Fourteenth Amendment. If, therefore, the defendants are about to act in such manner as to take such property without due process of law, the plaintiff is entitled to the protection of the federal court under constitutional warrant.

2. The next question, challenging in its nature, is the right of the Congress to grant aid to projects of the character sought to be constructed and carried out by the defendants.

This question brings into review the National Industrial Recovery Act, approved June 16, 1933 (48 Stat. 195), and particularly title 2 thereof, relating to the subject of "Public Works and Construction Projects." The Industrial Recovery Act was predicated upon the power of the Congress to regulate interstate commerce. Section 8 of article 1 of the National Constitution confers upon the Congress power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

By the first section, title 1 of the Industrial Recovery Act (15 USCA § 701), it is declared that: "A national emergency productive of widespread unemployment and disorganization of industry, which burdens interstate and foreign commerce, affects the public welfare, and undermines the standards of living of the American people, is hereby declared to exist. It is hereby declared to be the policy of Congress to remove obstructions to the free flow of interstate and foreign commerce which tend to diminish the amount thereof."

It will be thus seen that the Congress, realizing the limitations of its power, undertook to justify its enactment as an emergency measure under the granted power to regulate commerce among the states.

In relation to public works and construction projects, section 201 (a) thereof (40 USCA § 401 (a), the following postulate was laid down by the Congress: "To effectuate the purposes of this chapter, the President is hereby authorized to create a Federal Emergency Administration of Public Works, all the powers of which shall be exercised by a Federal Emergency Administrator of Public Works (hereafter referred to as the 'Administrator')."

It was provided by section 202 of said act (40 USCA § 402) that: "The Administrator, under the direction of the President, shall prepare a comprehensive program of public works, which shall include among other things the following: (a) Construction, repair, and improvement of * * * public buildings, and any publicly owned instrumentalities and facilities."

Then, by section 203 (40 USCA § 403), it was provided: "With a view to increasing employment quickly * * * the President is authorized and empowered, through the Administrator * * * (1) to construct, finance, or aid in the construction or financing of any public-works project included in the program prepared pursuant to section 202 [section 402]; (2) upon such terms as the President shall prescribe, to make grants to States, municipalities, or other public bodies for the construction, repair, or improvement of any such project, but no such grant shall be in excess of 30 per centum of the cost of the labor and materials employed upon such project."

The defendants, pursuant to the foregoing provisions, and by reason of the power and authority there attempted to be conveyed, made arrangements with the Administrator of Public Works for financial aid to enable them to construct an electric plant for the city.

The question is: Did the Congress have such power under the commerce clause of the Constitution, and did it attempt to exercise such power?

Clearly the allegations of the bill are such as to indicate that interstate commerce is neither affected directly nor indirectly by the project. The plaintiff is not engaged in interstate commerce, but wholly and exclusively in the generation and distribution of electrical energy within the state of Missouri.

█ For the purposes of this motion, the allegations of the bill must be accepted as true.

█ In the important case of Utah Power & Light Co. v. Pfost, 286 U. S. 165, loc. cit. 181, 52 S. Ct. 548, 552, 76 L. Ed. 1038, it was specifically declared that the generation of electricity "is as essentially local as though electrical energy were a physical thing." The Supreme Court in that case specifically conceded to the state "exclusive control over the manufacture" of electricity. It must follow that, if the Congress had no power to control the generation of electricity as in the instant

4

case, it would have no authority to grant aid to the construction of a plant over which it would have no legislative authority.

This principle was firmly established in the case of Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724. In that opinion, the court denied the constitutionality of the Child Labor Act. The court said (loc. cit. 272 of 247 U. S., 38 S. Ct. 529, 531):

"The making of goods and the mining of coal are not commerce, nor does the fact that these things are to be afterwards shipped, or used in interstate commerce, make their production a part thereof. Delaware, Lackawanna & Western R. Co. v. Yurkonis, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397.

"Over interstate transportation, or its incidents, the regulatory power of Congress is ample, but the production of articles, intended for interstate commerce, is a matter of local regulation.

" 'When the commerce begins is determined, not by the character of the commodity, nor by the intention of the owner to transfer it to another state for sale, nor by his preparation of it for transportation, but by its actual delivery to a common carrier for transportation, or the actual commencement of its transfer to another state.' "

It should be borne in mind in the instant case that the electricity when generated was distributed wholly within the state of Missouri, and its distribution as well as its manufacture was intrastate commerce.

3. The act of Congress cannot be justified upon the ground of an emergency.

In Home Building & Loan Association v. Blaisdell, 290 U. S. 398, loc. cit. 425, 54 S. Ct. 231, 235, 78 L. Ed. 413, 88 A. L. R. 1481, the Supreme Court specifically said that: "Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved. The Constitution was adopted in a period of grave emergency. Its grants of power to the federal government and its limitations of the power of the States were determined in the light of emergency, and they are not altered by emergency."

In the great case of Ex parte Milligan, 4 Wall. 2, loc. cit. 120, 18 L. Ed. 281, the court said, in reference to the framers of the Constitution:

"Those great and good men foresaw that troublous times would arise, when rulers and people would become restive under restraint, and seek by sharp and decisive measures to accomplish ends deemed just and proper;

and that the principles of constitutional liberty would be in peril, unless established by irrepealable law. * * *

"The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances. No doctrine, involving more pernicious consequences, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Such a doctrine leads directly to anarchy or despotism, but the theory of necessity on which it is based is false; for the government, within the Constitution, has all the powers granted to it, which are necessary to preserve its existence."

In the light of the foregoing authorities of the highest court of the land, it must be ruled that the Administrator of Public Works had no constitutional authority to aid the defendants in the construction of their projects, and, if it were intended by the Congress to promote that character of construction work under the Industrial Recovery Act, then such purpose impinges upon constitutional inhibitions and is invalid.

4. It would follow from the foregoing that the defendants' finance plan has an important element of illegality. The financial arrangement, being an illegal one under the authority of Hight v. City of Harrisonville, 328 Mo. 549, 41 S.W.(2d) 155, the plaintiff, as a taxpayer, would have a right to interfere, and on constitutional grounds would have the right to make the challenge in this court.

In the case of City of Campbell, Mo., v. Arkansas-Missouri Power Co., 55 F.(2d) 560, 562, the Circuit Court of Appeals for this Circuit said: "As the owner of this franchise, however, the plaintiff was entitled to relief against the illegal acts of others who might assume to exercise the privilege conferred upon it by its franchise. A franchise is property, and, as such, is under the protection of the law, and without express words it is exclusive as against all persons acting without legal sanction."

Again, the court said: "We are clear that the plaintiff, as the holder of this franchise to maintain and operate the plant in defendant city, was entitled to protection against all illegal competition."

5. Attention has been called to the case of the City of Allegan v. Consumers' Power Co., 71 F.(2d) 477, 481, Sixth Circuit Court of Appeals.

That case is in point; the identical question was before the court as in this case. The Sixth circuit, however, treated the aid granted by the Administrator of Public Works as a mere loan. The court pointed to the rule that courts have no power per se to review and annul acts of Congress on the grounds that they are unconstitutional. That is the accepted rule, and trial judges must observe it.

In the instant case, however, it is alleged in the petition that the Federal Emergency Administration of Public Works is proposing to make a loan and gift to pay for the work and the installation of the plant. By other appropriate allegations of the bill the power of the Congress to provide for such loans or gifts is challenged. Pertinent excerpts from the Industrial Recovery Act show that the object of the loan or the gift was not for the mere purpose of loaning money or giving away money in order to relieve distress, but it was for the sole purpose of promoting and bringing about the construction of an utility. According to the allegations of the bill, the construction of another utility at Concordia would seriously affect the property rights of the plaintiff. In the case of City of Allegan v. Consumers' Power Co., supra, the court said on the subject of a constitutional question: "That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such act."

Again, referring to the act, it is to be observed that Congress first declared an emergency, and then asserted its constitutional power to regulate commerce among the states. It created the Federal Emergency Administration of Public Works to effectuate its purposes and empowered the Administrator thereof to prepare a comprehensive program of public works, including the construction of publicly owned instrumentalities and facilities, and to make grants of funds to municipalities for the construction of such projects.

Under this law, the Congress authorized the plan of such construction, and then proposed to encourage the construction of such instrumentalities by grants of funds to accomplish the object. It is true that the amount of the grant was limited to "30 per centum of the cost of the labor and materials employed upon such projects."

It is obvious that the defendants propose to construct a plant because of plans and aid promoted, formulated, and granted by the Administrator of the Federal Emergency Administration of Public Works. If this be illegal, then, upon the bill, plaintiff is entitled to the relief sought. By appropriate averments it has challenged the legality of the project because of the circumstance that the Congress, in promoting the project, has exceeded its constitutional powers, or that the Administrator was acting in excess of his powers.

It is not necessary to decide the constitutional question. The Congress only intended to promote and aid instrumentalities of interstate commerce. It did not intend to grant aid to instrumentalities of intrastate commerce. It is clear that it neither intended, nor did it have the power, to aid intrastate commerce in this way.

Other questions raised need not be discussed. It is sufficient to say that plaintiff's bill is invulnerable as against the motion to dismiss. Accordingly, the motion will be denied. It is so ordered.