## UNITED STATES v. SCHOR et al.

### No. 36390.

District Court, E. D. New York.

Jan. 10, 1936.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (James G. Scileppi, of Brooklyn, N. Y., of counsel), for the United States.

Abraham B. Hertz, of New York City (Fred L. Gross, of Brooklyn, N. Y., and Benjamin C. Ribman, of New York City, of counsel), for defendants.

BYERS, District Judge.

On December 23, 1935, these defendants pleaded guilty to count 6 of an indictment containing 18 counts, and, upon the acceptance thereof, they were sentenced to serve 6 months and 3 months, respectively.

Three days thereafter, they filed a petition for a writ of habeas corpus, which was issued. Upon the return thereof, argument was adjourned pending the filing of briefs on January 6th.

Simultaneously with the filing of the petition, the defendants procured an order directing the government to show cause on December 31, 1935, why an order should not be made, revoking the sentences and the pleas, and dismissing the indictment, and permitting the defendants to withdraw their pleas and stand trial. That motion was submitted, and decision reserved pending the filing of briefs.

Apparently only the writ is now sought to be sustained, if the brief filed for the defendants is correctly understood.

The motion for leave to withdraw the pleas was not made before the imposition of sentence, and is therefore denied (rule II, paragraph 4, U. S. Supreme Court Rules, etc., in Criminal Cases, 28 U.S.C.A. following section 723a, effective September 1, 1934).

The argument advanced to sustain the writ is that the court was without jurisdiction to entertain the cause. This is said to be so because the statute under which count 6 of the indictment is laid, does not apply to these defendants. The said statute (Cr.Code, § 35) was amended June 18, 1934 (18 U.S.C.A. § 80), and its presently material language is as follows:

"or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or

used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

In the count of the indictment in question, the defendants were charged with a violation of the foregoing statute, in that on August 9, 1934, "they knowingly and wilfully made and caused to be made a false bill, voucher, account and affidavit knowing the same to contain a fraudulent statement in the matter of the demolition of buildings and construction of the Triborough Bridge, Contract No. 12 of the said project, a matter within the jurisdiction of the Federal Emergency Administration of Public Works, a Department of the United States, by virtue of the provisions of Title II of the National Industrial Recovery Act [section 201 et seq. (40 U. S.C.A. § 401 et seq.)], and the Rules prescribed by the President pursuant thereto, and a financing and loan agreement entered into for the construction of the said Triborough project between the said Federal Emergency Administration of Public Works, and the Triborough Bridge Authority, pursuant to the said statute and rules * * *."

That which follows points out with particularity the respects in which the bill, voucher and account were false and fraudulent, in designated payroll matters.

The argument for the defendants is that these allegations do not render the said statute applicable because the defendants were operating under a contract with Triborough Bridge Authority, and that the certification concerning payrolls did not involve "any matter within the jurisdiction of any department or agency of the United States."

The contract has been examined as though it were before the court, and probably the reference to it in the indictment is a sufficient justification for so doing. If it be thought otherwise, all that can be said is that in no other way could the court follow the argument made for and against the writ, and both sides have apparently assumed that the contract is before the court.

The document discloses that neither the United States nor any agency thereof, is a party to it; however, paragraph (VV) reads: "This contract shall not be effective until approved by the Resident Project Engineer." That official, according to paragraph B, is thus described: "Whenever the words 'Resident Project Engineer' or 'Resident Project Auditor' are used in this contract or the accompanying specifications, they refer to and designate respectively the Resident Project Engineer and the Resident Project Auditor appointed by the United States Government pursuant to a certain Loan Agreement hereinafter referred to in Section (FF)."

The latter paragraph makes it clear that the contractor's compensation is payable out of funds procurable from the United States, pursuant to Title II of the National Industrial Recovery Act.

Thus the defendants entered into a contract which required, for its validity, the approval of a representative of the United States upon the understanding that they would be paid from funds having their origin in the United States Treasury.

The relation of the federal government to certain aspects of performance of the contract, appears from provisions contained in paragraphs (BB), (EE), (FF), (II), (NN), (RR) subdivisions f, h, 3 (b), 9 (a), 13 (b), and 14.

These various provisions seem clearly to contemplate that the performance of the contract not only involved, but necessarily required, the functioning of the Federal Emergency Administration of Public Works, an agency of the United States, created and operating pursuant to Title II of the National Industrial Recovery Act.

If this is so, the government has properly invoked the statute under which this count of the indictment is laid.

The defendants rely upon:

Illinois Power & Light Corp. v. City of Centralia (D.C.) 11 F.Supp. 874.—In this cause in equity, the court apparently granted an injunction against a contract for the erection of a municipally owned utility plant, under a contract which contained substantially the same character of provisions, touching the supervision by the same governmental agency, as are presented in the case of the Triborough Bridge. The court was of the opinion that the municipality there involved (a city in Illinois) could not legally delegate to an agency of

the United States the authority and discretion contemplated by that contract.

These defendants make no such attack. They were sufficiently satisfied that the contract was legal, to enter into it, and to perform, in part, their duties under it; also they have pleaded guilty to having falsely certified to claims for compensation according to its terms.

For the purposes of the present inquiry, it may be said that the decision tends to show that under such circumstances an agency of the United States is so intimately associated with such a contract as to point to the applicability of the statute from which the defendants seek deliverance.

Missouri Public Service Co. v. City of Concordia (D.C.) 8 F.Supp. 1.—Here a bill in equity was sustained over exceptions, and a motion to dismiss, where it was alleged that government funds were sought in aid of a utility project not involving interstate service. The constitutional question touching the power of Congress to appropriate funds in behalf of intrastate projects seems not to have been decided.

U. S. v. Certain Lands in City of Louisville (D.C.) 9 F.Supp. 137.—A demurrer was sustained to a petition to condemn public lands in aid of a federal low cost housing project because no "public use" was contemplated.

The decision was affirmed in (C.C.A.) 78 F.(2d) 684.

These cases seem not to affect the question here presented.

The further argument is made that Congress could not legally prescribe the rate of compensation or hours of labor, because of its constitutional limitation of function to matters over which the several states have no capacity to act; and that this restriction is not avoided even though a loan and grant of United States funds are involved in this contract.

These contentions are thought to have no application.

The question is confined to whether the statute invoked by the government was offended by these defendants.

If the false certificates, etc., were not filed in any matter within the jurisdiction of any agency of the United States, the writ should be sustained; otherwise, it should be vacated.

It is thought that the matter of payments under this contract was within the jurisdiction of the administrative agents of the United States appointed pursuant to Title II of the National Industrial Recovery Act, by the terms of paragraph (RR), subdivision 9 (a), of the contract, reading as follows:

"There shall be submitted to the Administrator, through his authorized agents, the names and addresses of all personnel and such schedules of the cost of labor, costs and quantities of materials, and other items, supported as to correctness by such evidence as, and in such form as, the Administrator, through his authorized agents, may require. The submission and approval of said schedules, if required, shall be a condition precedent to the making of any payment under the contract."

It is true that the money was paid out to the contractor, as funds of the Triborough Authority, and not as funds of the United States; and yet the payments, according to the terms of the contract, might have been withheld pending the submission and approval of the required data. In other words, the exercise of administrative function, i. e., jurisdiction, on the part of an agency of the United States was recognized as a necessary consequence of entering into and carrying out the contract, into which these defendants entered.

If the foregoing reflects a correct understanding of the necessary incidents of the contract which gave rise to the defendants' claims for payments, it follows that they intended to and did submit themselves to the exercise of jurisdiction by an agency of the United States, when they filed the certificates, vouchers and bill which they knew to be false, and that this court had jurisdiction of the offense charged.

The writ will be vacated, and the motion denied.

The defendants' contentions, with respect to the jurisdiction of the court, have been somewhat extended and perhaps include matters which might better have been raised by demurrer to the indictment.

That was not done. If the defendants be so advised, they may move for an order in arrest of judgment, and the disposition above indicated is without prejudice to the making of such a motion.

Settle orders on notice in accordance with the foregoing.