## No. 32,351

THE KANSAS UTILITIES COMPANY, *Appellant*, v. THE CITY OF BURLINGTON et al., *Appellees*.

(44 P. 2d 223)

Opinion filed May 4, 1935.

*James A. Allen, B. M. Dunham,* both of Chanute, *Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the appellant.

*B. H. Kingsbury,* city attorney, and *L. H. Hannen,* of Burlington, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to enjoin the city from entering

into, and challenging the legality of, a proposed contract with the federal government in connection with the construction of a municipal electric light plant. Although as originally presented to the trial court, other grounds for relief were urged and other relief was sought, only the principal question above outlined is presented by the appeal.

It is not necessary to review the pleadings nor to go into detail about the trial. The trial court made findings of fact which include the following: Plaintiff is a public utility corporation of Kansas, and under proper certificate of convenience and necessity from the corporation commission it serves the defendant city and about thirty other towns in the vicinity with electricity. Since 1926 it has had no franchise at Burlington. It owns real and personal property in Burlington on which it pays taxes, and it is also a federal taxpayer on account of its business and property in Burlington. Burlington is a second-class city, and on May 3, 1933, the governing body enacted an ordinance calling an election to vote on a bond issue not exceeding $118,000 for the purpose of erecting an electric light plant and distribution system. The result was in favor of the bonds, and on July 5, 1933, the governing body passed a resolution making application to the federal emergency administration of public works for a donation of thirty per cent of the total cost of the construction and a loan to be secured by bonds of the city of seventy per cent of the total cost, and on September 13, 1933, an application was duly filed, showing the total loan and grant as $118,000. On January 10, 1934, the governing body passed a resolution confirming, renewing and amending its application for a loan of $118,-000 and a grant of whatever amount was necessary, when coupled with the loan the federal administration was willing to make the city, to enable the city to build the plant. On January 25, 1934, the federal administration allowed an allotment to the city of $145,000, of which $35,000 was an unconditional grant, the remainder to be made up by the purchase of $110,000 of the general obligation bonds of the city to be issued and sold pursuant to the constitution and statutes of the state of Kansas, and on February 12, 1934, the federal administration submitted a "loan agreement" which provided for such grant and purchase of bonds, and provided further that the issuance and sale of the bonds should be pursuant to the constitution and statutes of Kansas, and that in case any of the bonds were sold to purchasers other than the federal government,

the principal amount which the government was obliged to take and pay for would be correspondingly reduced. The trial court further found:

"13. That no evidence was introduced upon the trial of this case showing or tending to show any invalidity in the proceedings taken by the city of Burlington under the statutes of the state of Kansas in the issuance of the bonds in question, or that said bonds when issued, would increase the total bonded indebtedness of the defendant city beyond the amount authorized by the statutes of this state.

"14. That the construction of the proposed municipal plant by the city of Burlington would cause a loss of business to the plaintiff and a consequent loss of profit derived from the operation of its present plant, and would make less valuable the plaintiff's investment in its property used and usable in rendering service to said city and its inhabitants, and the property of plaintiff located in said city would be subjected to the payment of taxes to pay principal and interest on the bonds in question."

As a matter of law the trial court concluded the city had a legal right to construct a municipal light plant and distribution system; to accept grants or donations, and to issue and sell its general obligation bonds in an amount not to exceed $118,000 for that purpose; that in the absence of any invalidity in the issuance of the bonds, the presumption is that the bonds are, in all respects, regular, and that the plaintiff was not entitled to an injunction by reason of the fact it is a state or federal taxpayer or because it is a public utility. A previously issued restraining order was set aside, and a permanent injunction denied. Plaintiff's motion for a new trial was denied and it appeals.

It is noted that reference is made in the pleadings to chapter 32 of the Laws of 1933 (R. S. 1933 Supp. 12-805a to 12-805k), but as that act refers to revenue bonds as therein defined, and not to general obligation bonds, and as it is not the act under which the city acted or on which it relies, it will not be noticed further.

The bonds in question were authorized to be issued under R. S. 12-801, 12-802 and 12-834, and there is no question raised as to the regularity of the proceedings, nor does there seem to be any question the city could have proceeded to build the electric light system at a cost not exceeding the authorized amount if it had not attempted to coöperate with the federal government. After the above bonds were authorized, the legislature of Kansas enacted the Laws of 1933 (Special Session), chapter 33, section 1, which reads as follows:

"In order to coöperate with the federal government under the national industrial recovery act and during the time said act is in effect, the governing body or the proper officers of any municipality or governmental subdivision now empowered by law to make public improvements, or to extend or repair same and to issue general-property obligation bonds in payment of the cost thereof, is hereby given the power and authority, subject to all the limitations for the authorization thereof, and the issuance of general obligation bonds to pay the cost therefor as by law provided, to contract for and make such improvements or extensions or repairs in such manner as to comply with and secure the benefits of the provisions of the national industrial recovery act and the rules promulgated thereunder."

This act took effect December 5, 1933, and prior to the city's second application of January 10, 1934, on which the federal government seems to have acted on January 23, 1934, resulting in the so-called "loan agreement" above referred to. It is this attempt on the part of the city to coöperate with the federal government of which plaintiff complains.

While there is considerable argument as to the right of the plaintiff to maintain this action, it does not appear to be necessary to discuss separately its rights as a state taxpayer, a federal taxpayer and a public utility. It may be noted that here the regularity of the bond election and the legality of the bonds is not in question, there is no contention the city lacks power to construct the plant and, considered separate and apart from the "loan agreement," plaintiff, as a state taxpayer, cannot maintain its action under R. S. 60-1121, for under such circumstances no public burden is created nor is there to be any levy of an unlawful tax, as the result of an unauthorized act. In the case before us the question as to doing an act not authorized by law pertains, not to the grant of power to the city to coöperate under R. S. 1933 Supp. 12-674, but to the power of the federal government to extend its aid as contemplated by 40 U. S. C. A. §§ 401-414, inclusive, hereafter referred to as "the national industrial recovery act," and as evidenced by the "loan agreement," of which complaint is made. If that question is properly before us in this action by reason of proper pleadings, proper parties, and findings of fact warranting relief, which a district court of this state is authorized to grant, then we may say plaintiff has the right to maintain the action. And the same is true generally with respect to plaintiff's rights as a public utility or as a federal taxpayer. As those rights depend on matters hereafter discussed, we shall pass them for the moment.

Appellees insist that there is a defect of parties defendant. In their answer it is alleged that the reasonableness, constitutionality, propriety and validity of the acts of certain officials of the United States government, namely the administrator of public works, his agents, etc., and of the laws and authority under which they act, and the validity of said acts are the principal questions raised by plaintiff; that the rights of the administrator are involved, and that he is a proper, necessary and indispensable party to the action and to a complete determination thereof, and it is necessary the administrator be made a party defendant. It may be observed that we are not concerned with the propriety of the legislation involved here; both the federal and state legislation were the result of legislative discretion, and it is not the function of courts to pass upon the wisdom and sufficiency or lack of it in such legislation. The only question with which we may be concerned is the power of the legislative body to enact it. Nor are we concerned with whether the federal administrator would be a necessary party were the question before us limited to the right of a city to do an act which it was claimed violated some provision of our state statutes. So far as is necessary, the question will be treated later.

The loan agreement to which plaintiff objects contains many matters not of present interest. It is divided into four parts, part *one* providing that the borrower will sell and the government will buy $110,000 principal amount of an authorized issue of bonds of $118,000 at par and the government will make a grant of not to exceed thirty per cent of the cost of labor and materials employed on the project which shall cost not to exceed $145,000; that the proceeds of bonds and grant shall be used for the construction of the light plant pursuant to the city's application, the national industrial recovery act and the constitution and statutes of Kansas, including R. S. 12-801, 12-802 and 12-834. The bonds are described as to form and maturities, place of payment, etc., and provisions for being taken up by the government, creation of retirement fund, etc., are made. Part *two* provides for requisitioning proceeds of bonds and grant by the city from the government. Part *three* contains covenants of the city as to labor, wages, labor preferences, employment services, use of human labor, accident prevention, compensation insurance, bonds, material, etc., and part *four* provides for prompt construction, completion of the project and furnishing of information, as well as conditions precedent to the government's

obligation, and representations and warranties of the borrower and other matters not of present concern. There is, however, specific provision that the agreement shall be governed by and be construed in accordance with the laws of the state of Kansas.

As we view plaintiff's contention, it no longer claims that under our statutes the city is without power to issue bonds to build a light plant and, under R. S. 1933 Supp. 12-674, to enter into a contract with the federal government for assistance in connection therewith, and as generally outlined above, but that the government itself lacks power in that the national industrial recovery act does not authorize such coöperation on the part of the United States, or if it be held that it does, so construed the act is unconstitutional, and that therefore the act of the city in making the agreement will be unlawful. Assuming for the moment that no other obstacle presented itself, it would seem that before this court could treat the question of the force and effect of the national industrial recovery act as applied to the federal government, some official or agency of that government would have to be a party defendant. To grant the relief prayed for would in effect adjudicate the rights of the government, which is not a party to the suit. It is argued that it is impossible to obtain service on any official or agency of the government, and that the government has been solicited to voluntarily appear, and refuses, but neither situation warrants the court in assuming to take jurisdiction and to render a judgment which will affect the rights of the absent party. (See 20 R. C. L. p. 667 et seq.; 21 C. J. pp. 237-282, inclusive, and Kansas decisions cited.) Also, see *Hart Coal Corporation v. Sparks*, 9 F. Supp. 825, where it was held:

"In suit to enjoin United States attorney from enforcing penalties under national industrial recovery act for violating administrator's orders attacked as being arbitrary and capricious, court held without jurisdiction to consider such ground of attack in absence of administrator." (Syl. ¶ 1.)

But passing defect of parties and assuming that the relief prayed for might otherwise be granted, we are confronted with the proposition that a suit by a past or future federal taxpayer, to restrain the enforcement of an act of congress authorizing appropriations of public money upon the ground the act is invalid cannot be entertained in equity, and that to invoke the judicial power to disregard a statute as unconstitutional, the party who assails it must show not only that the act is invalid but that he has or will immediately

sustain direct injury as a result of its enforcement, and not merely that he suffers in common with people generally. (*Massachusetts v. Mellon*, 262 U. S. 447, 67 L. Ed. 1078.) In that opinion, two separate actions were considered, one by the state of Massachusetts, and one by a federal taxpayer, both seeking to prevent the expenditure of federal moneys under the maternity act, it being claimed that the purposes intended by the act were a usurpation of power not granted to congress. In disposing of the matter as to the individual taxpayer's bill, it was said:

"The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern. If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect of the statute here under review but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned. The bare suggestion of such a result, with its attendant inconveniences, goes far to sustain the conclusion which we have reached, that a suit of this character cannot be maintained. It is of much significance that no precedent sustaining the right to maintain suits like this has been called to our attention, although, since the formation of the government, as an examination of the acts of congress will disclose, a large number of statutes appropriating or involving the expenditure of moneys for nonfederal purposes have been enacted and carried into effect.

"The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws; to the executive the duty of executing them; and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct or restrain the action of the other. We are not now speaking of the merely ministerial duties of officials. (*Gaines v. Thompson*, 7 Wall. 347.) We have no power *per se* to review and annul acts of congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. It amounts to little more than the negative power to disregard an unconstitutional enactment, which otherwise would stand in the way of the enforcement of a legal right. The party who invokes the power must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally. If a case for preventive relief be presented the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding. Here the parties plaintiff have no such case. Looking through forms of words to the substance of their complaint,

it is merely that officials of the executive department of the government are executing and will execute an act of congress asserted to be unconstitutional; and this we are asked to prevent. To do so would be, not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and coequal department, an authority which plainly we do not possess." (p. 487.)

In its principal aspects, the same situation as exists in the case at bar was presented in *City of Allegan v. Consumers Power Co.*, (C. C. A. 6th Cir.) 71 F. 2d 477 (decided June 6, 1934), where the power company, a Maine corporation owning property in the city, on which it paid taxes, and supplying the inhabitants with electricity, questioned the power of the city to issue bonds for a municipal light plant and to coöperate with the federal government by way of loan and grant under the national industrial recovery act. In disposing of the company's contentions as to the scope and constitutionality of the recovery act, the court said:

"Aside from this, however, we are of the opinion that the utility is without right to raise any question either as to the effect of or the constitutionality of the recovery act in the present suit. As a federal taxpayer it neither has nor asserts such right. It relies upon its status as a taxpayer and as a property owner in Allegan.

"It has long been settled that the courts have no power *per se* to review and annul acts of congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. . . . The party who invokes the power must be able to show not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally. If a case for preventive relief be presented, the court enjoins in effect not the execution of the statute, but the acts of the official, the statute notwithstanding. (*Massachusetts v. Mellon,* 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078; *Heald v. District of Columbia,* 259 U. S. 114, 42 S. Ct. 434, 66 L. Ed. 852; *Cusack Co. v. City of Chicago,* 242 U. S. 526, 37 S. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A 136, Ann. Cas. 1917C 594; *Plymouth Coal Co. v. Pennsylvania,* 232 U. S. 531, 34 S. Ct. 359, 58 L. Ed. 713; *Arkadelphia Milling Company v. St. Louis S. W. Ry. Co.,* 249 U. S. 134, 39 S. Ct. 237, 63 L. Ed. 517; *Williams v. Riley,* 280 U. S. 78, 50 S. Ct. 63, 74 L. Ed. 175. . . .)

"A final contention remains to be noted. The city under the validating act is authorized to sell its bonds previously approved. It is claimed that authority to sell does not include authority to pledge, and since the announcement of the public works administrator indicates the nature of the advancement to the city to be a loan, the city is without power to avail itself of such

aid. The contention is without merit. One who purchases municipal obligations from the city in a true sense loans his money to the city. The transaction with respect to the evidences of debt is nevertheless a sale by the borrower and a purchase by the lender. It is otherwise when securities are pledged for the payment of a debt with title in the borrower prior to default, and with the right of the lender to enforce a deficiency upon foreclosure and sale of the securities for an amount insufficient to liquidate the debt. There is no contention that the transaction here contemplated embraces such conditions. . . ." (pp. 481, 482.)

A petition for writ of *certiorari* in the above case was denied by the United States supreme court on October 8, 1934 (79 L. Ed. 103).

Time and space forbid reference to the many cases in which questions arising under the national industrial recovery act have been considered, among which are: *Missouri Public Service Co. v. City of Concordia,* (Mo.) 8 F. Supp. 1; *Missouri Utilities Co. v. City of California,* (Mo.) 8 F. Supp. 454; *Ashwander v. Tennessee Valley Authority,* (Ala.) 9 F. Supp. 800, and in which there is contrariety of conclusion.

Conceding that some of the inferior federal courts may have held to the contrary, in so far as the national industrial recovery act is concerned, it appears that under the Mellon case, *supra,* and other cases mentioned, and assuming that all necessary parties were before the court, the plaintiff is without right to question the validity of the national industrial recovery act, and therefore the judgment of the trial court is correct. Such a conclusion obviates discussing many of the propositions advanced in the briefs of both parties.

The order of this court of March 16, 1935, staying proceedings is set aside. The judgment of the trial court is affirmed.

BURCH, J. (concurring specially): Plaintiff is lawfully engaged in business in the city of Burlington and has valuable property employed in the business. The proposed action of the city will put an end to profitable conduct of the business by plaintiff. Due process of law requires that this result must be accomplished by lawful means only, and in my judgment plaintiff is qualified to challenge the means by which the deprivation shall be accomplished.

The deprivation is to be accomplished, not by the city alone, but by the city coöperating with the federal government. The nature of the coöperation is such that it requires, in part, surrender of police power, something which the city cannot do, and which the legislature cannot authorize. Beyond that, however, the nature of

the coöperation is such that it requires exercise of power by the federal government under act of congress. I doubt whether the enumeration of powers granted to congress by the constitution of the United States embraces one which is applicable, but I have not reached a settled conviction.

There is no federal officer or agent who is suable here. Only the city of Burlington is suable here. Assuming that, under the law, the city and officers and agents of the federal government have joined in a scheme, execution of which will constitute a depredation upon plaintiff's property interests, I think jurisdiction over the city is enough to warrant relief against the city, whatever the effect on the coadjutor. However, to stop the city from participating in the scheme is necessarily to stop exercise of power by the federal government in this state, asserted pursuant to act of congress. I dislike to contemplate doing this, by a judgment rendered without a hearing, which would not legally bind the federal government. The constitutional question is too grave, and the consequences of a decision are too momentous. Therefore I concur in the judgment of this court affirming the judgment of the district court denying injunction.