**CENTRAL ILLINOIS PUBLIC SERVICE CO. v. CITY OF BUSHNELL, ILL., et al.**

**No. 7015.**

Circuit Court of Appeals, Seventh Circuit.

Jan. 11, 1940.

---

A. D. Stevens, Gray Herndon, and Elmer Nafziger, all of Springfield, Ill., and Charles V. O'Hern and Jay J. Alloy, both of Peoria, Ill., for appellant.

R. E. Lybarger, of Bushnell, Ill., and Orville N. Foreman and E. W. Cleary, both of Jacksonville, Ill., for appellees.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This suit was instituted by appellant, the Central Illinois Public Service Company (Illinois Corporation), to enjoin the city of Bushnell, Illinois, from accepting a grant of $96,000, allotted by the Federal Administrator of Public Works under Title II of the National Industrial Recovery Act, 40 U.S.C.A. § 401 et seq., and supplemental legislation,[1] to aid the City in the erection of a rival power plant; and also to enjoin the City from issuing $119,000 of the City's public utility certificates for the purpose of constructing such a plant. The defendant City moved to dismiss, the District Court dismissed the complaint, and the case is here on appeal.

The plaintiff owns and operates electric plants and distribution systems in various municipalities throughout Illinois. Among other communities served by the plaintiff is the city of Bushnell, from which it has a non-exclusive franchise giving it the right to construct, maintain, and operate an electricity-distribution system therein. This franchise was granted in 1926 for a period of 20 years. In addition, in 1931 it contracted to supply the City with electric energy for 10 years for municipal water pumping. In other words, the plaintiff is a property owner in the City, and as such is a corporate taxpayer of the City, State and United States.

Municipal corporations in Illinois may go into the utility business and compete with private utility companies. Moreover, municipal utilities do not come under the regulation and supervision of the Public Utilities Commission as do the privately owned utilities. Springfield Gas & Electric Co. v. Springfield, 292 Ill. 236, 126 N.E. 739, 18 A.L.R. 929, affirmed 257 U.S. 66, 42 S.Ct. 24, 66 L.Ed. 131. The Municipal Ownership Act is the enabling act and it authorizes and empowers any city in the state to acquire and operate any public utility.[2] To satisfy the Act the municipal corporation is required to pass an ordinance, describing the proposed utility and the way it will be financed, and then obtain the approval of the voters. Hairgrove v. City of Jacksonville, 366 Ill. 163, 170–172, 8 N.E.2d 187.

In August of 1938, the City Council passed an ordinance pursuant to the authority of the Municipal Ownership Act described above. Conforming to the enabling act, the ordinance described the proposed power plant and informed the voters how the construction cost of $215,000 would be financed. In this regard, the ordinance stated that the cost would be paid "in part with funds derived by grant from Federal Emergency Administration of Public Works" and in part with funds derived by the issuance of $119,000 of public utility certificates. In September of 1938, the voters approved the ordinance.

In June of 1938, the Public Works Administration Appropriation Act of 1938 became effective, authorizing federal grants to municipal corporations. See footnote 1. In July of 1938, the Illinois legislature authorized all municipal corporations in Illinois to apply for federal grants. Ill. Rev.Stat.1939, Chap. 29, § 33a, p. 792. The City made application for a federal grant, and subsequently the Federal Administrator allotted the sum of $96,000.[3]

---

[1] The "Work Relief and Public Works Appropriation Act of 1938" was passed June 21, 1938. 52 Stat. 809. In controversy here is Title II thereto, referred to as the "Public Works Administration Appropriation Act of 1938," 15 U.S.C. § 728, 15 U.S.C.A. §§ 721–728.

[2] Sec. 1 of the Municipal Ownership Act: "That any city in this state shall have the power, subject to the provisions of this act, to acquire, construct, own and operate any public utility * * *." Ill.Rev.Stat.1939, Chap. 111⅔, § 96, p. 2536.

Sec. 3 of the Act: "No city shall proceed to acquire or construct any public utility * * * until an ordinance of the city council providing therefor has been duly passed and submitted to the electors of such city and approved * * *. Such ordinance shall set forth the action proposed, shall describe the plant * * * proposed * * * and shall provide for the issue of bonds, mortgage certificates or special assessment bonds * * *." Ill.Rev.Stat.1939, chap. 111⅔, § 98, p. 2536.

[3] The record shows that the City applied for a gift and that the Administrator allotted $96,000. However, the record is not clear as to the exact date of the application and the allotment. Appellee states in its brief that the allotment was made in August of 1938, and

*Plaintiff's Legal Right to Relief as Franchise-holder.*

There is a principle of law that a holder of a non-exclusive franchise has a legal right to be free from the competition of one not having a valid franchise to compete. Frost v. Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483. This principle has usually been applied to cases where the defendant acted under a void franchise or none at all. Puget Sound Traction, Light & Power Co. v. Grassmeyer, 102 Wash. 482, 173 P. 504, L.R.A. 1918F, 469; Lindsley v. Dallas Consol. St. Ry. Co., Tex.Civ.App., 200 S.W. 207. Likewise, a franchise holder has been allowed to restrain a municipality from competition where it lacked properly vested authority to exercise the franchise to function as a utility. City of Campbell v. Arkansas-Missouri Power Co., 8 Cir., 55 F. 2d 560, 562.

However, a non-exclusive franchise to operate as a public utility, standing alone, does not create a right to be free of competition, and subsequent competition from private or municipal corporations does not violate the due process clause of the federal constitution. U.S.C.A.Const.Amend. 14. Madera Water Works v. Madera, 228 U.S. 454, 33 S.Ct. 571, 57 L.Ed. 915; Puget Sound Power & Light Co. v. Seattle, 291 U.S. 619, 624, 54 S.Ct. 542, 78 L.Ed. 1025. That is to say, a municipality has a right to build and operate a municipal power plant, even though such a plant will compete with and finally destroy the value of a private corporate plant, if the municipality has proceeded according to state law.

Nor are these principles affected when the factual situation is, as alleged in the instant case, that the municipality will accept a gift from a donor not authorized to give. In such cases it has been settled that as long as the municipal franchise is valid, no legal right of the local utility is violated. This is true, because the donor owes the sufferer no enforceable duty to refrain from making the unauthorized gift, and the donee owes the sufferer no obligation to refrain from accepting the gift. See Duke Power Co. v. Greenwood County, 302 U.S. 485, 58 S.Ct. 306, 82 L.Ed. 381; Alabama Power Co. v. Ickes, 302 U.S. 464, 480, 484, 58 S.Ct. 300, 82 L.Ed. 374; California Water Service Co. v. City of Redding, D.C., 22 F.Supp. 641, 644, affirmed 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323.

From the discussion of the principles above stated, it follows that it is first necessary to determine whether the City of Bushnell was properly authorized under Illinois law to construct and operate the proposed municipal power plant. In Illinois, compliance with the Municipal Ownership Act (the enabling act) constitutes proper and authorized municipal action, and we have no hesitation in concluding that there is compliance in the instant case.

The enabling act gives authority and power to cities but requires a municipal ordinance and voter approval as conditions precedent. This requirement was met. The enabling act also requires that "Such ordinance shall set forth the action proposed, shall describe the plant * * * and shall provide for the issue of bonds, mortgage certificates or special assessment bonds * * *." This requirement was also met. In addition, the ordinance provided for the receipt of money in the form of a federal grant, which was proper and expressly authorized under special legislation. Ill.Rev.Stat.1939, Chap. 29, § 33a, p. 792.

Plaintiff's attack on the enabling legislation—the Municipal Ownership Act and the ordinance—is cleverly fashioned.[4]

---

this is not denied. Other facts, on the other hand, tend to show that the allotment was not made prior to November of 1938.

Thus, under date of July 9, 1938, by Release No. 3358, the Administrator promulgated a rule which stated that "allotments to municipalities for power projects" would be made "only after the municipalities" have satisfied the Administrator that a reasonable offer had been made to the existing local power utility.

Now the City made its offer on October 4, 1938, and the utility rejected the offer as unreasonable on November 3, 1938.

On November 15, 1938 the Administrator telegraphed a request to the utility to submit briefs by November 26, 1938 on the issue of reasonableness of the offer. Later, the Administrator notified the City that the gift of $96,000 was forthcoming, as soon as the City sold the certificates and obtained the $119,000 in cash therefor.

[4] 15 U.S.C. Sec. 728, 15 U.S.C.A. §§ 721–728, the federal statute in controversy, states that "No funds * * * shall be allotted for any project which in the determination of the Administrator cannot be commenced prior to Jan-

Plaintiff contends that the federal grant will be illegal, and that therefore the enabling legislation (which authorizes the receipt of a federal grant) is polluted and contrary to Illinois public policy. From this, plaintiff argues that the consequent competition will be illegal, and hence violative of the due process clause of the federal constitution. We can not appreciate the contention urged. See Southwestern Gas & Electric Co. v. City of Texarkana, 5 Cir., 104 F.2d 847; Kansas Utilities Co. v. City, 141 Kan. 926, 44 P.2d 223; Duke Power Co. v. Greenwood County, 4 Cir., 91 F.2d 665, affirmed 302 U.S. 485, 58 S.Ct. 306, 82 L.Ed. 381.

Plaintiff is trying to dress up as "illegal", municipal action otherwise completely within the City's powers, on the ground that the authorization was rendered possible by providing for the acceptance of funds which the payor allegedly lacked authority to give. Cf. Missouri Public Service Co. v. City of Concordia, D.C., 8 F.Supp. 1. The threatened injury to plaintiff is not so much a consequence of the City's lack of authority to acquire and operate a rival power plant, as it is a consequence of the City's alleged lack of authority subsequently to secure $96,000 in the way described.

Reduced to the simplest terms, the complaint in this case alleges, and the local utility in its argument in effect contends, that the City, in proceeding to enter into competition with it, is doing a lawful thing in an unlawful way, and that the United States, in giving the City money to be used in building a municipal plant, is doing that which it has no right to do. And, the law is settled that the local utility, as a federal taxpayer or as a franchise holder, may not question the right of the United States to grant funds to the City as proposed; the source of the funds can not affect the question of invasion of rights, where plaintiff has no interest in the funds that it could protect by injunction. Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374; Duke Power Co. v. Greenwood County, 4 Cir., 91 F.2d 665, affirmed 302 U.S. 485, 58 S.Ct. 306, 82 L.Ed. 381; and Porto Rico Ry. Light &. Power Co. v. Colom, 1 Cir., 106 F.2d 345, 354.

Under the circumstances, and in view of our discussion, we conclude that the complaint in the instant case does not state a cause of action within the cognizance of the federal courts. In actuality, the federal questions sought to be raised are plainly unsubstantial, and any attempt made to give the question, whether the City (plainly authorized to acquire and operate a rival power plant) has power to receive an allegedly illegal gift, the aspect of a federal question is unavailing. See Hurn v. Oursler, 289 U.S. 238, 245, 246, 53 S.Ct. 586, 77 L.Ed. 1148; California Water Service Co. v. City of Redding, D.C., 22 F.Supp. 641, affirmed 304 U.S. 252, 256, 58 S.Ct. 865, 82 L.Ed. 1323; Arkansas-Missouri Power Co. v. City of Kennett, 8 Cir., 78 F.2d 911, 924.

---

uary 1, 1939, or the completion of which cannot be substantially accomplished prior to June 30, 1940 * * *." Title II, Sec. 201 (b).

Plaintiff argues that the phrase "in the determination of Administrator" means that the Administrator must make express findings of fact, and that if the phrase is not so construed the statute is unconstitutional as an undue delegation of legislative power.

The complaint alleges that no determination concerning the time limitation was ever made, and that therefore the federal allotment was made in violation of the statute. Of course, the exhibits attached to the complaint and the complaint itself also show that an application for a grant was made, an offer to the utility extended, consideration given thereto by the Administrator, and notification that a grant was forthcoming sent. See footnote 3.

So the plaintiff argues that the grant was illegal, either as unauthorized under a valid statute or as authorized under an invalid statute. The plaintiff further argues as follows: (1) the municipal ordinance "gave to the City * * * an extent of authority which was * * * expressly limited to a utility constructed in part by grant from the Federal Administrator"; and (2) "because the grant was to be obtained by the City only through a violation * * * of a Federal statutory prohibition, the Statute of Illinois * * * *expressly prohibited* the establishment of the proposed utility, *unless* there be read into both the Statute (Illinois) and the Ordinance *permission* to establish the proposed utility *by means obtained through direct violation* of a Federal prohibition; and that if so interpreted," the Illinois legislation "would be contrary to public policy, and void."

*Plaintiff's Right to Relief as Municipal Taxpayer.*

The complaint in the instant case also alleges that the proposed grant of $96,000 is in excess of 5 percent of the value of the taxable property in the City. In this connection the Illinois constitution[5] restricts the incurrence of municipal "indebtedness" to the 5 percent limit. Plaintiff contends that the acceptance of the grant, alleged to be illegal, will give rise to an "indebtedness" by subjecting the City to a general liability to repay the amount of the gift.

On this point a similar contention has been rejected by the federal courts. City of Allegan v. Consumers' Power Co., 6 Cir., 71 F.2d 477, 482, certiorari denied, 293 U.S. 586, 55 S.Ct. 100, 79 L.Ed. 681. The exact issue has also been decided adverse to plaintiff by the state courts. State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300. Considerable doubt also exists that plaintiff will suffer a direct injury, even if this were held to be an "indebtedness."

There is also some authority for the proposition that quasi-contractual recovery is not available against a municipality where the debt would exceed a constitutional debt limitation. Litchfield v. Ballou, 114 U.S. 190, 5 S.Ct. 820, 29 L.Ed. 132. Moreover, in the instant case we are not satisfied that plaintiff has properly alleged this non-federal cause of action. And, the issue presented is strictly one involving a local question. In the absence of a substantial federal question, and after all that is the case here, the federal courts are neither required to consider local causes of action nor allowed to do so.

The decree of the district court is affirmed.

---

[5] Ill.Const. Art. IX Sec. 12, Smith-Hurd Stats.