SOUTH SUBURBAN SAFEWAY LINES,
INC., Plaintiff,

v.

The CITY OF CHICAGO; Chicago Transit Authority; Department of Housing and Urban Development, Robert C. Weaver as Secretary of Housing and Urban Development, Leo J. Cusick as Director of the Department of Housing and Urban Development, Urban Mass Transportation Administration, and William Hurd, Deputy Director of the Department of Housing and Urban Development, Urban Transportation Administration, Defendants.

No. 67 C 1772.

United States District Court
N. D. Illinois, E. D.

June 10, 1968.

Dale, Haffner, Grow & Overgaard, Chicago, Ill., and Olsen, Cantrill & Miller, Springfield, Ill., for plaintiff.

Raymond F. Simon, Corp. Counsel, City of Chicago, and Robert E. Wiss, Sp. Asst. Corp. Counsel, Chicago, Ill., for defendant, City of Chicago.

George J. Schaller, O. R. Hamlink and Norman J. Barry, Chicago, Ill., for defendant, Chicago Transit Authority.

Thomas A. Foran, U. S. Atty., Chicago, Ill., for all other defendants.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

ROBSON, District Judge.

The defendants have moved to dismiss this suit for a declaratory judgment and for an injunction. For the reasons set forth below, this court is of the opinion that these motions should be granted.

The plaintiff, South Suburban Safeway Lines, Inc., is an Illinois corporation which operates under a certificate of public convenience and necessity from the Illinois Commerce Commission. It provides motor bus services to and from points south of Chicago in Illinois and points in south central Chicago. It has served this area in some form since 1927. Its four principal routes, accounting for 82% of its annual revenue, follow the Dan Ryan Expressway. The defendants City of Chicago and the Chicago Transit Authority (C.T.A.) are building a rapid transit extension down the middle of the Dan Ryan Expressway, from about 18th Street to 95th Street south. The federal defendants are providing financial aid to the city and the C.T.A. under the Urban Mass Transportation Act, 49 U.S.C. § 1601 et seq.

The plaintiff claims that, because of this federally-subsidized competition, it will be irreparably injured should this transit system go into operation. It claims that its status as a public utility gives it a legal right that is protected from invasion by the Fifth and Fourteenth Amendments to the Constitution. The federal defendants are alleged to have granted money to the other defendants without meeting the requirements of the Urban Mass Transportation Act, and that even if the requirements were met, that statute is unconstitutional. The plaintiff in its prayer for relief asks for (1) a declaration that the requirements of the Act were not met; (2) a declaration that "just compensation" be paid to plaintiff for this invasion of its "property right," and (3) an injunction to restrain the federal defendants from granting any further funds to the local defendants, unless and until the requirements of the Act are met, or just compensation is paid.

All the defendants argue that the plaintiff has no standing to bring this suit in this court. This question must be decided first, since, if the plaintiff is found to lack standing, the suit must be dismissed for lack of jurisdiction. E. g., Central Illinois Public Service Co. v. City of Bushnell, Illinois, 109 F.2d 26, 30 (7th Cir. 1940).

In order for the plaintiff to show that it has standing, it must show that it has suffered, or will suffer in the future a "direct injury," i. e., a wrong which directly results in the violation of a legal right. Alabama Power Co. v. Ickes, 302 U.S. 464, 479, 58 S.Ct. 300, 82 L.Ed. 374 (1938). This "legal right" may be a property right, a contractual right, a right protected against tortious invasion, or a right conferred by a statute or constitutional provision. Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 137, 59 S.Ct. 366, 83 L.Ed. 543 (1939). The plaintiff here claims that it has a right conferred on it by the Constitution or a statute, and that it has a property right under Illinois law.

The Urban Mass Transportation Act, however, confers no express right on the plaintiff to sue in this court. In fact, there is no provision for judicial review at all. Kendler v. Wirtz, 388 F.2d 381, 383 (3rd Cir. 1968). Cf. Harrison-Halsted Community Group, Inc. v. Housing and Home Finance Agency, 310 F.2d 99, 104 (7th Cir. 1962).

The plaintiff, however, contends that there is an "implied" right to sue under that Act. Because, the plaintiff argues, the statute mentions the need to co-ordinate private facilities with the overall plan for an urban transit system, this supplies the necessary "implied" right to sue. This contention is not well founded. Cf. Berry v. Housing and Home Finance Agency, 340 F.2d 939 (2nd Cir. 1965), and Pennsylvania Railroad Co. v. Dillon, 118 U.S.App.D.C. 257, 335 F.2d 292, 295 (1964).

If the statute had allowed judicial review of administrative decisions by "persons or parties aggrieved," then perhaps the plaintiff would have been under the doctrine of Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L. Ed. 869 (1940). In that case, the Supreme Court determined that a radio station, by virtue of its status as an economic competitor with another applicant station in the same area, had standing under the "person aggrieved" section of the Communications Act, 47 U.S.C. § 402 (b), in order to raise questions of public importance. Federal Communications Commission v. National Broadcasting Co., Inc. (KOA) et al., 319 U.S. 239, 247, 63 S.Ct. 1035, 87 L.Ed. 1374 (1943). The Communications Act expressly made it clear that judicial review was desired and encouraged. The only question for the court there was whether Sanders Brothers' injury was legally cognizable under the terms of that Act. Where there is no such provision for judicial review, the *Sanders Brothers* doctrine does not apply. As the Second Circuit Court of Appeals said in dealing with this point:

"There can be little doubt * * * that if this [Bituminous Coal] Act made no provisions for review in a Court of Appeals and if (without any statutory provision covering the mode of bringing such actions) petitioner had brought a suit in a district court, * * * dismissal of the suit [on the ground of lack of standing] would have been necessary." Associated Industries of New York State, Inc. v. Ickes, 134 F.2d 694, 702 (2nd Cir. 1943).

This consideration renders many of the cases cited by the plaintiff inapplicable as to this point to the case before this court: Federal Communications Commission v. National Broadcasting Co., Inc. (KOA) et al., supra; Scripps-Howard Radio, Inc. v. Federal Communications Commission, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); National Coal Association v. Federal Power Commission, 89 U.S.App.D.C. 135, 191 F.2d 462 (1951); Associated Industries of New York State, Inc. v. Ickes, supra, and Seatrain Lines, Inc. v. United States of America, 152 F.Supp. 619 (D.Del.1957).

The plaintiff's contention that it has standing because there is a mention of private companies and the need to include them in a mass transit plan, would, therefore, need more support in the statute than such a mention: There would have to be a judicial review section which

could be construed to include the plaintiff in its terms. The court in Atchison, Topeka and Santa Fe Ry. Co. v. Summerfield, 97 U.S.App.D.C. 203, 229 F.2d 777 (1955), made it quite clear that, although there was no provision for judicial review, that the action of the defendant was not simply one which created competition. There were specific statutes that required the railroads to purchase certain equipment, and the defendant's actions actually and directly called for retirement of much of this equipment. Also see Pennsylvania Railroad Co. v. Dillon, supra. In the absence of such a provision for judicial review, the plaintiff must look elsewhere to find support for its claim to standing.

■ Another statute which plaintiff argues gives it standing is Section 10 of the Administrative Procedure Act (A.P.A.), 5 U.S.C. § 702. That section provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

It is conceded, for the purpose of argument, that the plaintiff will be harmed sufficiently to be "adversely affected or aggrieved by agency action." There must be, however, a "legal wrong" or harm which is "within the meaning of a relevant statute." Since the Urban Mass Transportation Act does not expressly or impliedly give standing to the plaintiff, the plaintiff must find another "relevant statute" which might give them a right to judicial review. Also see Harrison-Halsted Community Group, Inc. v. Housing and Home Finance Agency, supra, 310 F.2d at 105. The only remaining "relevant statutes" that could conceivably give the plaintiff standing are the Fifth and Fourteenth Amendments to the Constitution,[1] which form the basis of plaintiff's argument that defendants' actions here violate the pro-

tections against deprivation of "property" without due process of law. It is clear to this court that the plaintiff must show that it was a victim of some "legal wrong" or that it was deprived of "property" without due process, in order to come within the A.P.A. provisions. But this is the same inquiry that the Alabama Power case, supra, requires. It therefore appears to this court that plaintiff's claim to standing rises or falls with the scope of the "property right" given to the plaintiff as a holder of a certificate of public convenience and necessity.

The plaintiff argues that its certificate of public convenience and necessity from the Illinois Commerce Commission gives it a "property right" which cannot be abridged without compensation by a municipal corporation's competition. The two pillars that support this argument are (1) that plaintiff's franchise creates an exclusive monopoly which prevents any competitor from entering the field, and (2) that the franchise creates a limited monopoly (or "regulated" monopoly) under the "carrier in the field" doctrine. Neither of these pillars stand up under the weight of the Illinois law.

The first ground is expressly negated by statute. S.H.A.Ch. 111⅔, § 56, ¶ 7, leaves no doubt on this point: "No certificate of public convenience and necessity shall be construed as granting a monopoly or an exclusive privilege, immunity or franchise." E. g., Chicago Railways Co. v. Commerce Commission, 336 Ill. 51, 70, 167 N.E. 840, 67 A.L.R. 938 (1929); Central Illinois Public Service Co. v. City of Bushnell, Illinois, 109 F.2d 26, 29 (7th Cir. 1940).

The second ground deals with an exception to this nonexclusivity rule. The doctrine of the "carrier in the field" protects an existing carrier from being replaced or placed in competition with another carrier until the Illinois Commerce Commission determines, by appro-

---

1. This court assumes, for the purposes of argument, that the Constitution qualifies as a "statute" under the A.P.A.

priate findings, that the existing carrier is either unwilling or unable to provide the requested services. E. g., Citizens Valley View Co. v. Illinois Commerce Commission, 28 Ill.2d 294, 192 N.E.2d 392 (1963). A municipal corporation when it competes with a private utility changes the picture considerably.

■ A municipal corporation is exempted by definition from regulation by the Illinois Commerce Commission. S.H.A. Ch. 111⅔, § 10.3. A municipality may grant an "exclusive" right to a municipal corporation or public authority to operate a street railway, such as the one involved in this case. S.H.A.Ch. 24, §§ 11–88–1 and 11–122–1. This the municipality can do

> "even though the effect of the operation of the Authority may be to prevent operation of other transportation systems in the area and to thus create a monopoly  *  *  *."
>
> \*    \*    \*    \*    \*    \*
>
> "*  *  *  Under the pronouncements of this court the city council [of Chicago] has power to decide whether the operation of a street railway in the city shall be competitive or monopolistic." People v. Chicago Transit Authority, 392 Ill. 77, 92, 95, 64 N.E.2d 4, 12 (1945).

The fact that another carrier like the plaintiff here has been operating in a nearby area does not constitute a barrier to the municipality entering the field, even if the privately owned public utility would be damaged by the competition. Central Illinois Public Service Co. v. City of Bushnell, Illinois, supra; People ex rel. Buffalo Utility Co. v. Village of Buffalo Grove, 85 Ill.App.2d 382, 229 N.E.2d 401 (1967).

Although in the *Buffalo Grove* case, supra the privately owned public utility was challenging the municipality's right to enter an area which neither had served before, the court there denied standing to the private company, and supported the above point that the "carrier in the field" doctrine does not apply when a municipality is the competitor.

More strongly supporting this court's view of plaintiff's position is the *Central Service* case, supra.

In that case, a privately owned public utility sued to enjoin the City of Bushnell, Illinois, from accepting a grant from the federal government to build and operate a rival power plant. The private company, like the plaintiff here, was the holder of a non-exclusive franchise. The court said, 109 F.2d at 29:

> "*  *  *  [A] non-exclusive franchise to operate as a public utility, standing alone, does not create a right to be free of competition, and subsequent competition from private or municipal corporations does not violate the due process clause of the federal constitution. *  *  *  That is to say, a municipality has a right to build and operate a municipal power plant, even though such a plant will compete with and *finally destroy* the value of a private corporate plant, if the municipality has proceeded according to state law." (Emphasis supplied.)

That the defendants, the City of Chicago and the Chicago Transit Authority, have proceeded according to state law seems to be beyond question. The exclusivity of the right of the C.T.A. and the City of Chicago to maintain a transit system was adopted by referendum on June 4, 1945, and the ordinance's constitutionality under the Metropolitan Transit Authority Act, S.H.A.Ch. 111⅔, § 301 et seq., was established by the Illinois Supreme Court in People v. Chicago Transit Authority, supra. The power to accept loans or grants from the federal government was given to the C.T.A. and the City of Chicago in that same statute. S.H.A.Ch. 111⅔, § 315. In addition, Illinois law provides that

> "Extensions and additions to such local transportation facilities may be authorized by ordinance with or without provision for referendum." S.H.A. Ch. 24, § 11–88–1.

The necessary ordinances apparently have been passed.

It thus appears that Illinois law has not granted to the plaintiff a sufficient interest to give it standing in this court to assert the invalidity of the Urban Mass Transportation Act, the unconstitutionality of the federal defendants' funding the rapid transit extension down the Dan Ryan Expressway, or the denial of due process from the lack of compensation for the economic damage the competition will allegedly create. Since the Illinois defendants were acting properly according to Illinois law, the allegedly illegal acts of the federal defendants cannot be inquired into by this plaintiff. Alabama Power Co. v. Ickes, supra. The remedy, if any exists, lies not in the courts, but in the Congress. Rural Electrification Administration v. Central Louisiana Electric Company, Inc., 354 F.2d 859, 865 (5th Cir. 1966); Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924, 931 (1955).

Since it does not appear that the plaintiff has the requisite standing, this suit must be dismissed for lack of jurisdiction. It is so ordered.