**SOUTH SUBURBAN SAFEWAY LINES, INC., Plaintiff-Appellant,**

**v.**

**The CITY OF CHICAGO, Chicago Transit Authority, et al., Defendants-Appellees.**

**No. 17179.**

United States Court of Appeals Seventh Circuit.

Oct. 6, 1969.

**536**

Harold M. Olsen, Olsen, Cantrill & Miller, Springfield, Ill., Brimson Grow, Dale, Haffner, Grow & Overgaard, Chicago, Ill., for plaintiff-appellant.

Robert E. Wiss, Raymond F. Simon, Corp. Counsel, Thomas A. Foran, U. S. Atty., Chicago, Ill., Morton Hollander, Chief, Appellate Section, Carl Eardley, Acting Asst. Atty. Gen., Alan S. Rosenthal, Michael C. Farrar, Attys., Dept. of Justice, Washington, D. C., for federal defendants-appellees.

George J. Schaller, O. R. Hamlink, Norman J. Barry, Chicago, Ill., for defendant-appellee, Chicago Transit Authority.

Before FAIRCHILD and KERNER, Circuit Judges, and HOLDER, District Judge.[1]

FAIRCHILD, Circuit Judge.

South Suburban Safeway Lines, Inc. brought action challenging a grant of federal funds to the city of Chicago or its transit authority pursuant to the Urban Mass Transportation Act of 1964 (UMTA).[2] The defendants are federal officers involved in granting the funds as well as the city and the Chicago Transit Authority.

The district court decided that South Suburban lacked standing and dismissed the action.[3] South Suburban appealed.

South Suburban operates a bus transportation system as an Illinois public utility. Its routes extend south from the central business district of Chicago. For a considerable distance they run along or parallel to the Dan Ryan Expressway.

Chicago Transit Authority is a body politic, created by an Illinois statute for the purpose of establishing a transportation system in Cook county, Illinois. The city and authority propose an extension of the authority's rail operations down the median strip of the Dan Ryan Expressway. South Suburban alleges that this service will compete with and destroy South Suburban's service.

The federal defendants approved a grant to the authority for the purpose of making the extension.

South Suburban alleged that UMTA is itself unconstitutional, and claims in any event, in substance, that the federal defendants failed to make findings required by UMTA or that such findings, if made, lacked sufficient support.

As will appear, we think that South Suburban clearly lacks standing to challenge the validity of UMTA. The closer question is whether it has standing to challenge the sufficiency of the federal defendants' compliance with the act, even though UMTA has no express provision for judicial review.

■ 1. *Taxpayer's lack of standing to challenge validity of federal expenditure.* South Suburban is undoubtedly a federal taxpayer. It is settled law that a taxpayer's interest in federal

1. District Judge Holder of the Southern District of Indiana is sitting by designation.

2. 49 U.S.C. §§ 1601–1611.

3. South Suburban Safeway Lines, Inc. v. City of Chicago (N.D.Ill., 1968), 285 F. Supp. 676.

funds is insufficient, as a general rule, for standing to challenge the validity of a federal law providing for expenditure or the validity of a particular expenditure.[4] In Flast v. Cohen[5] the Supreme Court found that the threat of federal expenditure in violation of the establishment clause of the first amendment gave a federal taxpayer standing to seek a judicial determination whether there was such violation. In our view, *Flast* indicates no change in the law of standing which would accord standing to South Suburban as a taxpayer to challenge UMTA or a particular expenditure under it.

■ 2. *South Suburban's lack of state law right to be free from competition.* Where a utility does not have a state law right to be free from competition, the threat of financial loss as a result of competition does not give standing to challenge validity of a federal loan or grant which will make the competition feasible.[6]

The district court analyzed the status under Illinois law of the certificates of public convenience and necessity granted to South Suburban and the statutory authority granted to Chicago Transit Authority. It concluded that South Suburban has no legal right to be free of competition from the authority.[7] We agree.

4. Frothingham v. Mellon (1923), 262 U.S. 447, 487, 43 S.Ct. 597, 67 L.Ed. 1078, 1085.

5. (1968), 392 U.S. 83, 88 S.Ct. 1942, 20 L. Ed.2d 947.

6. Alabama Power Co. v. Ickes (1938), 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374; Tennessee Electric Power Co. v. T. V. A. (1939), 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543; Duke Power Co. v. Greenwood (1938), 302 U.S. 485, 58 S.Ct. 306, 82 L.Ed. 381. Cf. Public Service Company of Indiana v. Hamil, 416 F.2d 648 (7th Cir., 17547, Sept. 18, 1969).

7. 285 F.Supp. pp. 679–680.

8. Kansas City Power & Light Co. v. McKay (1955), 96 U.S.App.D.C. 273, 225 F.2d 924, cert. denied, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780; Duba v. Schuetzle (8th Cir., 1962), 303 F.2d 570;

■ 3. *The effect of the Administrative Procedure Act.*

5 U.S.C. § 702 provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

As already pointed out, South Suburban does not have such rights under state law that a federal loan or grant assisting its competitor constitutes a "legal wrong". UMTA does not expressly confer a right to judicial review. Whether it carries an implication that South Suburban is a person aggrieved will be separately considered.

Although one can read § 702 as conferring standing on anyone who is "adversely affected * * * by agency action", the prevailing judicial interpretation has been that § 702 does not create standing which would not exist apart from § 702 by virtue of general principles or other statutes.[8]

Professor Davis cites senate and house committee reports to support his opposing view "that any person adversely affected in fact by agency action has the right of review."[9]

This circuit has, however, followed the prevailing view.[10]

Harrison-Halsted Com. Group, Inc. v. Housing & Home Finance A. (7th Cir. 1962), 310 F.2d 99; Pennsylvania R.R. v. Dillon (1964), 118 U.S.App.D.C. 257, 335 F.2d 292, cert. denied, American-Hawaiian S.S. Co., 379 U.S. 945, 85 S. Ct. 437, 13 L.Ed.2d 543; Braude v. Wirtz (9th Cir., 1965), 350 F.2d 702; Rural Electrification Admin. v. Northern States Power Co. (8th Cir., 1967), 373 F.2d 686. See Jaffe, The Right to Judicial Review II, 71 Harv.L.Rev. 769 at 790: "The Administrative Procedure Act has had negligible effect on the basic right to judicial review."

9. K. Davis, Standing—Taxpayers and Others, 35 U.Chi.L.Rev. 601, 619 (1968).

10. Harrison-Halsted Com. Group v. Housing & Home Finance A. (7th Cir., 1962), 310 F.2d 99, 104, cert. denied, 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 414;

**4.** *The basis of challenge to agency action in this case.* South Suburban is a private "mass transportation company" under UMTA. The purposes of the act are to assist in the development of improved mass transportation facilities and to encourage planning of urban mass transportation systems, with the cooperation of mass transportation companies both public and private, and to provide assistance to state and local governments and instrumentalities in financing such systems, "to be operated by public or private mass transportation companies as determined by local needs."

The act authorized the Secretary of Housing and Urban Development (the functions now having been transferred to the Secretary of Transportation) to make grants or loans to assist state and local public agencies in financing the acquisition and construction of mass transportation facilities.

§ 1602(c) is headed "Private transit operators" and provides in part:

"No financial assistance shall be provided * * * to any State or local public body or agency thereof for the purpose, directly or indirectly, of acquiring any interest in, or purchasing any facilities or other property of, a private mass transportation company, or for the purpose of constructing, improving, or reconstructing any facilities or other property acquired (after July 9, 1964) from any such company, or *for the purpose of providing by contract or otherwise for the operation of mass transportation facilities or equipment in competition with, or supplementary to, the service provided by an existing mass*

transportation company,[11] unless (1) the Secretary finds that such assistance is essential to a program, proposed or under active preparation, for a unified or officially coordinated urban transportation system as part of the comprehensively planned development of the urban area, (2) the Secretary finds that such program, to the maximum extent feasible, provides for the participation of private mass transportation companies, (3) just and adequate compensation will be paid to such companies for acquisition of their franchises or property to the extent required by applicable State or local laws, and (4) the Secretary of Labor certifies that such assistance complies with the requirements of section 1609(c) of this title."

South Suburban has adequately alleged that a grant has been made for the purpose of providing for operation of facilities in competition with it. The federal defendants appear to concede that the proposed facilities will be supplementary to South Suburban's service, though they do not concede there will be competition. In either event, it would necessarily follow that such grant was forbidden unless the four standards have been fulfilled. South Suburban has alleged that "there has been no showing" of the facts required by (1), (2), and (3). Presumably this is the equivalent of a charge that the secretary failed to make findings (1) and (2) or that the findings, if made, are not adequately supported, and that (3) is not fulfilled.[12]

**5.** *Does § 1602(c) imply that South Suburban has standing to seek judicial review?* In Hardin v. Kentucky Util-

---

Green Street Association v. Daley (7th Cir., 1967), 373 F.2d 1, 7, cert. denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995.

11. We have italicized the portion of the subsection which prohibits the use of funds to provide competition with an existing company, as claimed here. The four standards which must be fulfilled in order to render either the prohibition

against assistance for acquisition or the prohibition against assistance to create competition follow the italicized portion.

12. South Suburban also relies upon alleged nonfulfillment of standards set forth in § 1603. The latter are less definite than those in § 1602, leave even greater latitude to the secretary, and need not, for that reason, be separately considered.

ities Co.[13] a private utility alleged that T.V.A. was violating a specific statutory prohibition by expansion of its service into an area which plaintiff served. There was no express provision for judicial review. But the Court found, from the nature and history of the prohibition, that one of its primary purposes was to protect private utilities from T.V.A. competition. After noting the usual rule that injury by competition does not confer standing, the Court said that "when the particular statutory provision invoked does reflect a legislative purpose to protect a competitive interest, the injured competitor has standing to require compliance with that provision." [14]

The text of § 1602 does indeed show a concern that private ownership of existing mass transportation systems should not be unnecessarily or unfairly disturbed. But we do not find the clarity of purpose to prohibit competition with private utilities which was manifest in the statute in *Hardin*. In § 1602, Congress seems to have been primarily concerned over the possibility of public acquisition of private facilities (a subject not involved in this action) although competition with and supplementation of existing facilities were also dealt with. § 1602 begins with a prohibition against granting federal assistance for any of those purposes, but then relieves from such prohibition if four standards are met.

Each standard except (3), which is irrelevant here, calls for an administrative decision which is essentially an exercise of discretion. (1) requires a decision that the assistance is "essential to a program, proposed or under ac-

tive preparation, for a unified or officially coordinated urban transportation system as part of the comprehensively planned development of the urban area." (2) requires a decision that "such program, to the maximum extent feasible, provides for the participation of private mass transportation companies." (3), although demonstrated to be inapplicable to South Suburban as a matter of law, requires that state law rights to adequate compensation for franchises or property be fulfilled. (4) requires a decision by the Secretary of Labor that fair and equitable arrangements are made to protect the interests of affected employees.[15]

In the instant case the questions (1) whether the statute implies that a private utility claiming it will suffer competitive injury has standing, (2) whether the administrative decision is left so largely to discretion as to be reviewable at all, and (3) as to the scope of judicial review, tend to merge into one. The more the fulfillment of the standards is left to administrative discretion, the less the basis for implication of standing. It is our best judgment that Congress was satisfied that its statutory command to the secretaries was sufficient for its purpose, without resort to judicial review.

Assuming, however, that South Suburban has standing, we would come to the affidavit filed by the federal defendants in support of their motion for summary judgment.

The affiant was the Deputy Assistant Secretary for Metropolitan Development in the Department of Housing and Urban Development (which originally had jurisdiction in the matter). He assert-

---

13. (1968), 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787.

14. 390 U.S. at 6, 88 S.Ct. at 654.

15. (4) has not been an issue in this case. In Kendler v. Wirtz (3rd Cir., 1968), 388 F.2d 381, employees and their union challenged a decision of the Secretary of Labor that (4) had been fulfilled. The third circuit did not decide whether plaintiffs had standing, but held that the breadth of administrative discretion under (4) closely limited the scope of judicial review, virtually to whether or not the secretary had in fact made a judgment in the matter.

540

ed that officers of the department had reviewed the city's application for assistance and had made on site inspections and evaluations of the project. He named documents relating to planning for the Chicago urban area and its transportation system which were reviewed and considered. He listed a number of instances of participation of private transportation companies in an officially coordinated mass transportation system, and described one area of intended coordination of South Suburban's service with the proposed project. He set forth the findings made on the basis of the studies described, and they fulfilled standards (1), (2), and (4) in § 1602(c). With respect to (3) it was found that no franchise or property of a private mass transportation company would be acquired. Affiant stated that he had approved the grant in the exercise of powers formally delegated to him by the secretary.

As already suggested, the questions of standing, reviewability, and scope of review tend to merge. We conclude that even if South Suburban be accorded standing to challenge administrative compliance with § 1602(c), the review is so limited that South Suburban can not succeed.

No hearing was required by any statute. There is no record to examine. The elements of the findings to be made are discretionary, essentially more quasi legislative than quasi judicial. Surely Congress intended no trial de novo. The procedure which was followed shows that the administrative agency did address itself to the questions posed by § 1602(c), in a rational manner, and resolve them by findings which met the statutes. The showing made, we think, would support the agency decision in terms of the scope of review to which South Suburban might, at the utmost, be entitled.

The judgment is affirmed.