Mabio Pittohi, J.
Petitioner county, as a municipal corporation, has brought this article 78 proceeding against Metropolitan Transportation Authority (hereinafter called MTA) and Long Island Bail Boad Company (hereinafter called LIBE) for a judgment declaring illegal and annulling the MTA fare increase granted March 20, 1968 to LIBE. (Allegations concerning petitioner’s standing to sue, made in the briefs or on oral argument but not contained in the petition, cannot be considered.) Petitioner claims that the March 18, 1968 MTA hearing on the question of a commuter’s fare increase at LIBB’s request and the subsequent MTA decision, March 20, 1.968, to increase the fare are illegal in that MTA was both petitioner and trier of the facts, that the hearing itself was illegally conducted and that the increase was unconstitutional and illegal in that it violated subdivision 3 of section 1266 of the Public Authorities Law.
A contention that MTA did not pass a resolution required by subdivision 3 of section 1266 is disposed of by stating that such a resolution was duly passed and filed.
Some pertinent parts of the statute are as follows:
“ 1. The purposes of the authority shall be the continuance, further development and improvement of commuter transportation and other services related thereto within the metropolitan commuter transportation district. * * *
“2. It is hereby found and declared that such purposes are in all respects for the bénefit of the people * * * and the authority shall be regarded as performing an essential governmental function in carrying out its purposes and in exercising *1027 the powers granted by this title. (Public Authorities Law, § 1264.)
“ Establish, levy and collect or cause to be established, levied and collected * * * such fares * * * as it may deem necessary, convenient or desirable for the use and operation of any transportation facility * * * operated by the authority or by a subsidiary corporation * * *. Such fares * * * shall be established as may in the judgment of the authority be necessary to maintain the combined operations of the authority and its subsidiary corporations on a self-sustaining basis. The said operations shall be deemed to be on a self-sustaining basis * * * when the authority is able to pay or cause to be paid from revenue and any other funds or property actually available to the authority and its subsidiary corporations ”. (Public Authorities Law, § 1266, subd. 3.)
LIRE is a wholly owned subsidiary of MTA which is empowered by subdivision 3 of section 1266 to establish LIRE fares. However, “ any such fares * * * shall be established and changed only if approved * * * after a public hearing”. (Public Authorities Law, § 1266, subd. 3.) Such a hearing was held on the morning and the early afternoon of March 18,1968. Fifteen speakers, including legislators, appeared and gave their views. Several written statements were also made part of the record.
Now comes petitioner who applies for an order annulling the March 20, 1968 determination. The petition fails to state facts giving petitioner standing to sue as an aggrieved party or as a municipal corporation whose rights are affected. However, petitioner offers section 109 of the Public Service Law as authorizing it to bring this proceeding on behalf of its residents. That section says that ‘£ Each municipal corporation shall have the right to appear as a party before the [Public Service] commission or before any court in any action or proceeding involving rates * * * affecting the municipal corporation or any of its residents.” (Emphasis and bracketed material added.) This section does not limit court actions to review proceedings or hearings before the Public Service Commission and nothing in article 6, of which section 109 is a part, limits court action to the review of any prior hearing before any specific body. The language is clear that a municipal corporation may appear before any court in an action or proceeding involving rates affecting the municipal corporation or any of its residents. Contrary to MTA’s argument, subdivision 8 of section 1266 of Public Authorities Law merely divests the Public Service Commission and the Department of Public Service of any jurisdic *1028 tion or supervision of MTA. It does not abolish the right of a municipal corporation to appear before a court in an action or proceeding involving rates affecting its residents. Therefore, although petitioner has failed to show that it is an aggrieved party, it does have the right to bring this article 78 (CPLR) proceeding under section 109 of the Public Service Law.
MTA argues that its actions and decision herein are legislative in nature. Assuming, arguendo, at this point, that this is correct, the law is that official action characterized as ‘ ‘ legislative ” may not be reviewed in an article 78 proceeding (Home-field Assn. of Yonkers v. Frank, 273 App. Div. 788 [2d Dept.], affd. 298 N. Y. 524; Matter of Brent v. Hoch, 13 A D 2d 505 [2d Dept.]). However, because of the language of CPLR 103 (subd. [c]), instituting an article 78 proceeding instead of an action should not result in a dismissal if the error is one of form and the court has jurisdiction of the parties (Matter of Nowak v. Wereszynski, 21 A D 2d 427, 430; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 401.03). The latter elements have been satisfied.
Be that as it may, I shall now consider the merits. Petitioner argues that the March 18th hearing was illegal in that MTA was both petitioner and trier of the facts and that the public hearing on the question of fare increases as required by subdivision 3 of section 1266 is quasi-judicial. However, all cases cited by petitioner involved adversary proceedings between private litigants and governmental agencies or offices.
MTA is not a quasi-judicial body such as the Public Service Commission; rather it is a semi-legislative body empowered by the Legislature to determine rates and fares for itself and its subsidiaries “ as it may deem necessary, convenient or desirable ”. (§ 1266, subd. 3.) This is not unconstitutional or otherwise illegal. Concerning the delegation of State legislative powers to administrative bodies, Professor Kenneth Culp Davis, of Chicago University Law School, in his Administrative Law (1965 ed.), at page 44, says that “ The direction of movement of law of delegation is clear — one state court declared.in 1956 ‘ The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of laws as the complexity of governmental or economic conditions increase.’” Thus, a reading of the Public Authorities Law establishes that MTA “ shall be regarded as performing an essential governmental function — in exercising the powers granted” to it and the New York State Legislature empowered MTA to set the rates and fares for itself and its subsidiaries with certain safeguards *1029 spelled out and after a public hearing. The procedure and safeguards outlined did not mention any quasi-judicial or adversary proceeding. The Legislature merely commanded a public hearing prior to rate or fare making determination. There was such a hearing.
According to Professor Davis in his Administrative Law, page 135, ‘1 A hearing is any oral proceeding before a tribunal — . The method of trial is designed for resolving issues of fact and — the method of argument — is normally the appropriate oral process for resolving — policy and discretion.” Professor Davis then cites, page 138, Bi-Metallic Co. v. Colorado (239 U. S. 441) in which Holmes, J., writing for a unanimous court, said that a hearing for a legislative act is not constitutionally mandated. It follows that a quasi-legislative hearing, such as in the present case, can be primarily informational for the hearing body and to assist it in developing a reasonable rate or fare structure. (See 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.11, etc.)
The many witnesses who appeared and made statements at the March 18th hearing gave their views and arguments, unimpeded and uninterrupted by MTA members except for one witness who was admonished to end his statement as soon as possible after he had spoken nearly three times longer than any others. All who wanted to be heard were given the opportunity. This was a public hearing and to that extent subdivision 3 of section 1266 was satisfied.
Although the 15 speakers and the written objections complained of the service and the increase, no one suggested that LIRE’S financial condition did not require assistance; nor did anyone suggest a present alternative to a fare increase, except that some suggested the use of the 2% billion dollar bond issue approved by the People in the November, 1967 referendum. Several did suggest legislation to curtail the powers of the MTA and several also suggested legislation giving the Public Service Commission “ watch dog ” jurisdiction to take evidence and decide questions of LIRE fare increases. Only one made a firm demand for an adjournment in order to examine LIRE records, to have an independent audit of its records and to have an opportunity to present counter figures or statistics.
Nathan Klein, who filed an amicus curiae brief, argues that MTA, in failing to file official compilations of codes, rules and regulations with the Department of State, rendered its determination illegal under subdivision 4 of section 1266 of Public Authorities Law and section 102 of Executive Law. However, subdivision 4 of section 1266 merely says that MTA may *1030 establish codes, rules and regulations in the manner provided in section 102 of the Executive Law and such codes, rules or regulations are concerned only with the conduct and safety of the public. It is neither mandatory nor concerned with rates or fares.
Since this was a quasi-legislative hearing, any disagreement with MTA’s conclusion is no ground for finding it illegal. The State Legislature gave MTA broad powers and discretion to set rates and fares at any level “as it may deem necessary, convenient or desirable ” (§ 1266, subd. 3). The relief for the procedure involved herein and for any unreasonable fare increase must be supplied by the State Legislature, the body which granted MTA such sweeping power.
Incidentally, MTA is one of the dozens of nearly autonomous authorities, “ Frankensteins,” created by our Legislature. (See 2 volumes of McKinney’s Cons. Laws of N. Y., Book 42, Public Authorities Law.)
My 'function is not to substitute my judgment or that of others for that of MTA; it is only to determine whether MTA operated and determined according to the authority and powers bestowed upon it by the Legislature.
Therefore, although petitioner county is not an aggrieved party according to standards usually required for standing to bring an article 78 proceeding, it does have standing to sue pursuant to section 109 of Public Service Law.
However, MTA has been given semi-legislative power in “ performing an essential governmental function ” to determine fares “as it may deem necessary, convenient or desirable ’ ’; the MTA public hearing on March 18, 1968 was not required to be quasi-judicial and was legal pursuant to subdivision 3 of section 1266 of Public Authorities Law and constitutional standards ; MTA did not proceed without or in excess of jurisdiction or in violation of law; and MTA has not been shown to have been arbitrary, capricious or abusive of the discretion given it by the Legislature.
Accordingly, the petition is dismissed.