Irving H. Saypol, J.
Application is denied and the petition is dismissed. Settle judgment on four hours’ notice.
Petitioner, Educational Broadcasting Corporation (EBC), moves by order to show cause on its verified petition (CPLR *777 art. 78). Review and annulment is sought of the determination by the respondents, William J. Ronan, as Chairman of Metropolitan Transportation Authority, and Metropolitan Transportation Authority (MTA), denying to BBC’s television station Channel 13, atténdance for broadcasting by television of public hearings to be held by MTA on January 17, 20 and 21, 1972, next Monday, Thursday and Friday. The hearings have been announced as the required procedure under subdivision 3 of section 1266 of the Public Authorities Law incident to contemplated fare increases on the Long Island and New Haven Railroads and the Staten Island Rapid Transit System.
In a memorandum for the press dated January 12, 1972, MTA announced guidelines for the coverage of the hearings by the news media. These guidelines, say MTA, reaffirm its standard practice incident to its public hearings. The memorandum states in part: ‘ ‘ In accordance with the standard practice of this agency, courtroom procedure will be followed insofar as press coverage is concerned. Reporters from all media are welcome to sit in during the hearings. No cameras of any type will be allowed in the hearing room while the hearing is in progress. Radio reporters may, if they wish, attach their microphones to the microphone at the public speakers stand.”
BBC challenges MTA’s adherence to these guidelines as they exclude television cameras from the hearing room. Specifically, the contention is that the mandate of the law (Public Authorities Law, § 1266, subd. 3) is for public hearings before any fare increase. All news media (including cameras and other operating equipment) must be permitted to attend and “live and/or video tape television coverage ’ ’ should not be excluded without justification. Otherwise BBC is deprived of freedom of speech and press rights guaranteed by the United States Constitution’s First Amendment (American Broadcasting Co. v. United States, 110 F. Supp. 374, affd. on other grounds sub nom. Federal Communications Comm. v. American Broadcasting Co., 347 U. S. 284). That, it is further argued would constitute improper impairment of free discussion of governmental affairs by the public (Mills v. Alabama, 384 U. S. 214).
In opposition, MTA supports its stand by indicating the recognized disturbing, distracting, disruptive effects and interference with the legitimate objects of the public hearing by the intrusive effect of television cameras, equipment and operators in the hearing room — on witnesses, audience and hearing officials.
The announced hearings are primarily for use of the MTA to assist in developing a reasonable fare structure (Matter of *778 County of Nassau v. Metropolitan Transp. Auth., 57 Misc 2d 1025, affd. 32 A D 2d 647). The hearings afford to the public in attendance an expression of views on the subject of fare increases. It is the respondent MTA and its officers who are statutorily charged with the conduct of the hearings in that setting deemed by them most appropriate for their own edification on the public’s expression.
This is the background and the basis for MTA’s course, which includes exclusion not only of TV cameras but all cameras.
BBC in discussing the obvious requirement for respecting and enforcing broadly the First Amendment rights of the news media, in which it properly includes itself, yet overlooks the very apparent distinguishing features which set television reporting apart from newspaper and written media and radio due to the facilities and operating personnel in each separate field. Justice Tom C. Clark in the majority opinion in Estes v. Texas (381 U. S. 532, 539) rejects in one sentence a similar argument that the freedoms granted by the First Amendment extend a right to the news media to televise from the courtroom and that to refuse to honor this privilege is to discriminate between newspapers and television. This, said the learned Justice is a misconception of the rights of the press. The opinion continues (p. 544) with illustration of the interference potentials with orderly trial progress.
I say it is no different with the public hearing. Equipment inside and outside the hearing room, cameras, cables, maneuvering operators, the live camera with its red eye staring at the speakers, the intrusion, perhaps, of spectators, all are potential catalysts for interference and perversion from the truth. These are possible exciting drama-creating elements (cf. footnotes 24 and 25 to the concurring opinion of Warren, Ch. J., supra, pp. 569-570). Both the series of photographs in Estes, supra, at page 586 and the concurring opinions of Harlan, J., and three of the four dissenters recognize the distinction and the possibility of disturbance and consequent distraction.
By analogy, as suggested by Justice Clark, newspaper reporters would have to be allowed to bring their typewriters and printing presses into the hearing room, if BBC is right here. I extend the analogy, and it is hardly cognizable, if television can participate, can it be on the basis that the public is entitled as a matter of right to view the proceedings from its armchairs in its dens and living rooms t By legislative authority, perhaps yes; as a matter of constitutional right, certainly no. Coming back to the hearing room, if one TV station can bring in its equipment, what then of the other ten or so other broadcasters? *779 That kind of multiple invasion could soon outnumber the public audience.
It cannot be held that MTA is subject to mandamus for having failed to perform a duty enjoined upon it by law (CPLB 7803, subd. 1), or that it has or is proceeding, or is about to proceed without or in excess of jurisdiction (CPLB 7803, subd. 2) or that it has acted arbitrarily or capriciously in the premises (CPLB 7803, subd. 3). The determination of MTA does not violate the First Amendment right of EBC. Television reporters as well as press and radio reporters are welcomed to attend at the hearings to report to the public without restriction all that transpires. As said, the court’s judgment may not take the place of the respondents’, and, absent a contrary showing the presumption is that the action is in good faith (Campbell v. New York, 244 N. Y. 317; Eighth Ave. Coach Corp. v. City of New York, 170 Misc. 243, affd. 259 App. Div. 870, affd. 286 N. Y. 84).