A. Franklin Mahoney, J.
Petitioner seeks an order temporarily enjoining the respondent Capital District Transportation Authority (hereinafter referred to as CDTA) from altering, changing or modifying bus service within the County of Rensselaer and from charging bus fares in excess of those obtaining as of August 29,1972.
In support of its application petitioner charges noncompliance by CDTA with the provisions of sections 1305 and 1307 of the Public Authorities Law and article 5 of the Transportation Corporations Law. The respondent Authority counters by arguing that such changes in scheduling of public bus service within Rensselaer County and increased fares were adopted by CDTA in accordance with the powers delegated to it by the provisions of chapters 460 and 461 of the Laws of 1970 and, further, that ¡sections 1300 et seq. of the Public Authorities Law immunize CDTA from any restraints or restrictions that might be imposed on its authority by the provisions of any other laws, particularly the Transportation Law and/or the Transportation Corporations Law of this State.
Initially, the issue of “ standing ” must be faced. Section 51 of the County Law permits actions or proceedings to be brought by or against such a municipal corporation. Prior to the amendment of the Transportation Law in 1971, jurisdiction of all *429 omnibus lines and omnibus corporations was in the Public Service Commission (Public Service Law, art. 3-A, § 60) with the exception of those transportation facilities statutorily removed from the jurisdictional tent of the Public Service Commission (for example, Metropolitan Transportation Authority; Public Authorities Law, § 1260 et seq.). At that time section 109 of the Public Service Law delegated to municipal corporations the right to appear as a party before any court in any action or proceeding involving rates or service affecting a municipal corporation or any of its residents. On March 1,1971, by chapter 267 of the Laws of 1970, section 60 of the Public Service Law was repealed and, on the same date, article 6 (§ 140 et seq.) of the Transportation Law became the operative law and exclusive jurisdiction over bus lines and bus companies was transferred to the newly created Department of Transportation. Interesting, however, is the fact that no provision of the Transportation Law or Public Authorities Law delegates or grants to municipal authorities the right to appear before any court in any proceeding involving rates or service. This failure, however, to carry over into either the Public Authorities Law or the Transportation Law the statutory grant of standing to municipal corporations, has not been interpreted by our courts as a legislative intent to deny such status to municipalities and to force upon them requisite proof of aggrievement in order to establish their right to sue in those matters affecting rates and scheduling of transportation services provided by public authorities. In Matter of County of Nassau v. Metropolitan Transp. Auth., 57 Misc 2d 1025, affd. 32 A D 2d 647) the court held that section 1266 (subd. 8) of the Public Authorities Law, which divested the Public Service Commission of any jurisdiction over the Metropolitan Transportation Authority, did not abolish the right of the county to sue despite the absence of language similar to section 109 of the Public Service Law in the Public Authorities Law. It follows, therefore, that the County of Rensselaer does have standing to maintain this proceeding. The court now moves to a consideration of the petitioner’s objections.
First, the contention that CDTA is governed by the provisions of the Transportation Corporations Law is rejected. That law relates solely to private franchisees holding certificates of incorporation from the State and has no application to authorities which operate similar facilities over the highways of the State. Similarly, the provisions of the Transportation Law do not apply to omnibuses operated by an authority except to the limited degree expressly set out in the Public Authorities Law, *430 such as approval of the action plan of CDTA by the Transportation Commissioner (Public Authorities Law, § 1305).
The resolution of the issue before the court depends solely upon the application of the provisions of subdivisions 3 and 4 of section 1307 of the Public Authorities Law.
Subdivision 4 of section 1307 of the Public Authorities Law, so far as pertinent to that aspect of the controversy relating to bus scheduling, states as follows: ‘ ‘ The authority may establish * * * such schedules and standards of operations * * * as it may deem necessary, convenient or desirable ’ \ There is no statutory requirement for public hearings before an authority may alter or change the scheduling of its buses.
Regarding fare increases, subdivision 3 of section 1307 of the Public Authorities Law, so far as pertinent, states: “ The authority may establish, levy and collect * * * fares, tolls, rentals, rates, charges and other fees as it may deem necessary, convenient or desirable * * * Any such fares * * * for the transportation of passengers shall be established and changed only if approved by resolution of the authority adopted by not less than a majority of the whole number of members of the authority then in office and only after a public hearing, provided however, [emphasis supplied] that fares * * * for the transportation of passengers on any transportation facility which are in effect at the time that the then owner of such transportation facility becomes a subsidiary corporation of the authority or at the time that operation of such transportation facility is commenced by the authority * * * may be continued in effect without such a hearing [emphasis supplied] ”.
Since CDTA purchased the physical assets of both the United Traction Company and the Fifth Avenue Bus Company, rather than stock, we are not concerned with subsidiary corporations continuing to operate transportation facilities under the aegis of CDTA. Rather, since both omnibus companies discontinued public bus services, it can be said that CDTA “ commenced ” to provide the busing services heretofore provided by the two companies. The question is whether at the time of “ commencement ” CDTA charged a fare “ in effect ” at the time of acquisition. In my view, it did, and, therefore, was not statutorily required to hold a public hearing.
Chronologically, CDTA purchased the assets of the United Traction Company before those of the Fifth Avenue Bus Company. United Traction, at time of acquisition, was charging a 35-cent fare with full transfer privileges. A passenger could move „ around by bus anywhere in the confines of Rensselaer *431 County by physically transferring from one Traction Company bus to another for the single fare of 35 cents. When CDTA acquired the assets of Fifth Avenue the fare was 25 cents and there were no transfer privileges. At the time of purchase of the assets of Fifth Avenue each of the two bus companies had prescribed routes and there was no duplication of service over those routes. When CDTA acquired the buses of Fifth Avenue it garaged them and chose, by resolution properly adopted by the majority of the Authority members, to service those areas of the City of Troy and County of Rensselaer heretofore serviced by Fifth Avenue with United Traction Company buses at the rate charged by United at the time it sold its assets to CDTA. I see no distinction between this decision and the hypothesis that Fifth Avenue Bus Company didn’t exist and CDTA, after acquiring United Traction Company assets, deciding to expand its services to areas heretofore not serviced at the rate or fare “ in effect ” when it purchased the United Traction Company buses.
Finally, it is necessary to understand the nature of the Authority and the duties it is legislatively charged with regarding rates. The CDTA is a quasi-legislative body as distinguished from a quasi-judicial body and it draws its powers from the State Legislature which charged it with the duty of setting rates and fares at any level “ as it may deem necessary, convenient or desirable ” (Public Authorities Law, § 1307, subd. 3) and, more explicitly, the Legislature stated that ■ ‘ Such fares, tolls, rentals, rates, charges and other fees shall be established as may in the judgment of the authority be necessary to maintain the com-i bined operations of the authority * * * on a self-sustaining basis ” (Public Authorities Law, § Í307, subd. 3; emphasis supplied). This legislative grant of power is so affirmative and broad that this court would be powerless to set aside the 35-cent fare even if arrived at after a public hearing. Relief would have to come from the Legislature rather than the courts (Matter of County of Nassau v. Metropolitan Transp. Auth., 57 Misc 2d 1025, affd. 32 A D 2d 647, supra). The citizens ’ right to a “ public hearing ’ ’ before an authority such as CDTA is nebulous indeed, if, after hearing, the authority is convinced it must alter the rate charged for use of its facilities in order to “ maintain the combined operations of the authority * * * on a self-sustaining basis ”.
With this view of the power of CDTA to fix fares in mind, it is understandable why the Legislature statutorily permits the maintenance of the existing rate of an acquired facility without *432 public hearing. It also permits, in my view, the extension of the rate of an acquired facility to new areas within the ambit of the CDTA’s control which are to be serviced by the assets of the acquired corporation.
Therefore, since the court is of the view that petitioner is unlikely to succeed in its underlying action for a permanent injunction, it is constrained to deny the requested relief of a temporary injunction and to grant respondent’s cross motion to dismiss the proceeding.