Joseph G. Fritsch, J.
The plaintiff moves for a preliminary injunction enjoining and restraining the defendants from commencing and/or continuing bus service between the City of Rochester, New York and the Village of Geneseo, New York, or Geneseo State College; and enjoining and restraining the defendants from overriding, overrunning or competing with plaintiff in any manner with respect to, or interfering with plaintiff’s operation of, any bus route upon which plaintiff now operates bus service and which passes through the Village of Geneseo, New York or to Geneseo State College or any such bus route which plaintiff may in the future operate, and from attempting to divert or interfere with any passengers or other business which plaintiff may carry on any such bus route, pending the decision of the action for a permanent injunction.
The plaintiff, Western New York Motor Lines, Inc., also known as Empire State Trailways, hereinafter referred to as “ Trailways ”, is a private New York corporation, a common carrier engaged in the business of providing bus transportation for the public to and from various localities in western New York and elsewhere out of the State. It is operating under & certificate of public convenience and necessity issued by the New York State Department of Transportation and the Interstate Commerce Commission in operating its bus service between Rochester and Geneseo, New York. Trailways has, since 1939, provided *713 local or intermediate bns service between Rochester and Geneseo, New York. Such service is a vital part of a larger service provided to the public to localities beyond Geneseo and Rochester into Pennsylvania, Maryland, New Jersey and Washington, D.C., all of which bus service forms an integral part of Trailways ’ total service and thus its business. The plaintiff claims it has never received complaints of inadequacy of such service.
The defendants, Rochester-Genesee Regional Transportation Authority hereinafter referred to as the ‘ Authority ” is a public benefit corporation existing under the laws of the State of New York. The defendant, Regional Transit Service, Inc., hereinafter referred to as “ RTS ” is a subsidiary of the Authority and is also a public benefit corporation. Both defendants, who operate public transportation facilities, derive their powers from the Public Authorities Law of the State of New York. They contend that, after receiving numerous inquiries and requests from the public, the President of the State University College of Arts and Science at Geneseo, and the County Board of Supervisors of Livingston County, for the establishment of a “ Park and Ride ” commuter service between Rochester and Geneseo, New York, they determined by study that there was a need for such requested specialized commuter service between said points and, accordingly, they established such service known as ‘ Park and Ride ” effective January 15, 1973.
It is Trailways’ contention that if the Authority and RTS are allowed to operate this service between Rochester and Geneseo, it will funnel off the local and intermediate traffic which is necessary for Trailways to continue its bus service to the distant points south of Geneseo, and it would, therefore, not be in .the public interest and irreparable harm would be caused Trailways therefrom. Trailways further claims it has already been irreparably damaged as to good will and reputation by the defendants’ announced plans and action. It is further the contention of the plaintiff that the direct competition from the defendant on the Rochester-Geneseo route is without the consent of either the New York State Department of Transportation or the United States Secretary of Transportation and is in direct contravention of the provisions under which it receives Federal assistance and is, therefore, being undertaken in violation of the Public Authorities Law of the State of New York, the Transportation Law of the State of New York and such regulations as the Department of Transportation of the State of New York may have promulgated and the Urban Mass Transportation Act to which defendants are subject and are bound to adhere.
*714 It is the contention of the Authority and RTS that its “ Park and Ride” service does not conflict directly with the .service of the plaintiff, either in form or frequency, and that it does not have to make application as would a private omnibus corporation to the Department of Transportation for a certificate of public convenience and necessity under the Transportation Law, and that the use and involvement of Federal funding is irrelevant to the motion herein. The defendants contend that the plaintiff has failed to demonstrate facts sufficient to show it will be irreparably injured or that it has a clear right to injunctive relief, and further contend that they will suffer damage if enjoined because of the expense in excess of $5,000 already incurred by them in developing and advertising the commencement of the service.
To grant the plaintiff a preliminary injunction Trailways must show q clear legal right thereto as well as a firm showing that it will suffer irreparable injury. This principle was clearly stated by Justice G-abbielli in Etter v. Littwitz (47 Misc 2d 473, 476), as follows:
“ The court has no inherent power to grant a preliminary injunction (Bachman v. Harrington, 184 N. Y. 458) and the authority therefor must be found in the Civil Practice Law and Rules, the applicable provisions of which must be fully complied with. (Kleinman v. Kleinman, 283 App. Div. 1063.) These provisions as set forth in article 63 of the Civil Practice Law and Rules, among other requirements, mandate that in an action for an injunction, in order to obtain the requested relief in advance of trial, the plaintiffs show a clear legal right thereto, as well as a firm showing of irreparable injury to the movants. (De Candido v. Young Stars, 10 A D 2d 922.)
“ It has long been the rule that the burden of establishing the right to the drastic relief of a preliminary injunction is upon the moving party or parties. (Park Terrace Caterers v. McDonough, 9 A D 2d 113; Pine Hill-Kingston Bus. Corp. v. Davis, 225 App. Div. 182; Maxwell Co. v. Cusack Co., 200 App. Div. 610.) ”
In view therefore of the burden which Trailways has, the theory and merits of the plaintiff’s cause of action as stated in its complaint and as presented in its moving papers should be examined. In essence, plaintiff’s cause of action is predicated on the theory that the defendants are. acting in violation of the statutes and laws and regulations, of the State of New York and the United States in that they have failed to obtain the necessary *715 approvals and follow the procedure required before they -can begin bus -service between Rochester and Geneseo, New York.
Title 11-B of the Public Authorities Law, which is the Rochester-Genesee Regional Transportation Authority Act, recites in section 1299-ee the purposes of the Authority as follows:
“ 1. The purposes of the authority shall be the continuance, further development and improvement of transportation and other services related thereto within the Rochester-Genesee regional transportation district, by railroad, omnibus, marine and air, in accordance with the provisions of this title.
“ 2. It is hereby found aiid declared that such purposes are in all respects for the benefit of the people of the state of New York and the authority shall be regarded as performing an essential governmental function in carrying out its purposes and in exercising the powers granted by this title.”
Section 1299-gg and 1299-hh of the law spell out the broad general and special powers given to the Authority and its subsidiaries. Section 1299-hh in enumerating the Authority’s special powers provides among other things as follows:
“ 1. The authority may acquire * * * any transportation facility * * * within the * * * district * * * [subd. 1]
“ 2. The authority may * * * establish, construct, effectuate, operate, maintain, renovate, improve, extend or repair any such transportation facility * * *
‘ ‘ 3. The authority may establish * * * fares, tolls, rentals, rates, charges and other fees as it may deem necessary, convenient or desirable for the use and operation of any transportation facility * * *
“ 4. The authority may establish * * * schedules and .standards of operations and such other rules and regulations * * * as it may deem necessary * * *
“ 7. The authority may do all things it deems necessary, convenient or desirable to manage, control and direct the maintenance and operation of transportation facilities ”.
It seems that the Legislature intended by the enabling legislation that the defendants, Authority and RTS, public benefit corporations, be independent and autonomous in carrying out the responsibilities and functions which were delegated to it. (See Matter of New York Post Corp. v. Moses, 10 N Y 2d 199, 203, 204; Matter of Smith v. Levitt, 37 A D 2d 418, 421.)
It is unlikely that the Legislature intended .that in carrying out its purpose the defendants be subject to another State agency such as the New York State Department of Transportation (see Long Is. R. R. Co. v. Public Serv. Comm, of State of N. Y., 30 A D 2d 409, affd. 23 N Y 2d 852) and especially since the New *716 York State Department of Transportation under section 142 of article 6 of the Transportation Law has almost identical powers with respect to schedules, routes, rates, fares and sales and purchase of bus companies as those given to the defendant Authority in section 1299-gg of the Public Authorities Law with respect to its own operations.
The relationship and extent thereof, which the defendant Authority has with the Transportation Department and specifically with the Commissioner of Transportation is stated in section 1299-ff of the act relative to the filing and adoption of its master plan as follows: “In formulating such master plan, the authority shall consult and cooperate with the'commissioner of transportation and planning authorities in the areas of its operations, and shall utilize state, local or regional transportation planning.” (See, also, Matter of County of Rensselaer v. Capital Dist. Transp. Auth., 71 Misc 2d 428, 429-430.)
The master plan under which the defendants are operating the “ Park and Bide ” Rochester-Geneseo commuter service was adopted by the Transportation Authority on December 21, 1971, after a public hearing, and was approved by the Commissioner of Transportation of New York as well as the Genesee/Finger Lakes Regional Planning Board, City Council of the City of Rochester, and the Legislatures or Boards of Supervisors of the Counties of Monroe, Wayne, Livingston, Genesee, Ontario, Orleans, Seneca and Yates. The specific plan for such service was known to several representatives of the New York State Department of Transportation.
Further evidence of the legislative intent that the actions of Rochester-lGenesee Regional Transportation Authority be governed exclusively by title 11-B of the Public Authorities Law is contained in section 1299-xx of the act which .states as follows: “■Insofar as the provisions of this title are inconsistent with the provisions of any other law, general, special or local, the provisions of this title shall be controlling. ’ ’ The decision in Swan Lake Water Corp. v. Suffolk County Water Auth. (20 NY 2d 81), cited by the plaintiff, is not in point. There the defendant’s action was explicitly subject to the jurisdiction and approval of the Water Resources Commission.
It seems, therefore, from a limited review of the legislative history of the enabling legislation and case law, that the Rochester-Genesee Regional Transportation Authority and its public benefit subsidiary corporation RTS are not subject to the provisions of Transportation Law and, therefore, can do that which the plaintiff seeks to enjoin them from doing without the require *717 ment of obtaining from the Department of Transportation a certificate of public necessity and convenience such as is required of a private corporation.
The theory of the plaintiff that the defendants should be enjoined because they are acting in violation of the Urban Mass Transportation Act is an interesting one but one which is without merit on the motion here. The plaintiff has not sustained the burden, which it has, of showing that the Federal funds granted are being used by the defendants on the Bochester-Geneseo operation nor that, if used, the United States Secretary of Transportation has not made the required findings. As a matter of fact, it would seem that the grant of financial assistance would assume that such was' given by the United States Secretary of Transportation after full compliance with the law and the provisions of the Urban Mass Transportation Act (U. S. Code, tit. 49, § 1601 et seq.). It also .seems that, once the United States Secretary of Transportation had approved the grant, his action and judgment are not reviewable (see South Suburban Safeway Lines v. City of Chicago, 285 F. Supp. 676, affd. 416 F. 2d 535) directly or indirectly.
The plaintiff’s contention that, if the Authority and BTS continue to publicize the commencement of their operation and are allowed to actually commence and carry on bussing between Bochester and Geneseo, it will irreparably damage the plaintiff Trailways is without merit. The defendants are offering a different type of service than that offered and carried on by the plaintiff. It is a short-haul service and it serves the commuter, and being different, it does not compete four square with the service of the plaintiff. The interpretation that the operation of the defendants points to the inadequacies of the plaintiff’s service and will thereby injure its reputation is purely subjective. Such a conclusion is also speculative, fanciful and theoretical, and is insufficient to justify the granting of injunctive relief. (See People v. Canal Bd. of State of New York, 55 N. Y. 390, 397; see, also, Lair v. Grant, 137 Misc. 470; Nicowski v. Nicoski, 50 Misc 2d 167.) The further contention of the plaintiff that it will be irreparably harmed financially is also speculative and not founded on fact.
In the exercise of its discretion and in balancing the equities the court must weigh the relative hardship that may be imposed upon each of the parties by the issuance or denial of the preliminary injunction, and on such balance the equities appear to be in favor of the defendants; therefore, the plaintiff’s motion for the preliminary injunction is denied.