William L. Underwood, Jr., J.
This is an action in equity by plaintiff, a law firm, to enjoin the defendant, New York Telephone Company (hereinafter called Telephone Company), from terminating, limiting, or otherwise interfering with plaintiff’s telephone service on account of a certain conference call device installed by plaintiff without defendant’s consent or approval.
Plaintiff has moved for a preliminary injunction founded upon the nature of the action, alleging that because of plaintiff’s use of the conference call device, the Telephone Company has threatened cancellation of all of plaintiff’s telephone service, which if accomplished, would cause a complete shutdown of plaintiff’s law practice, and produce irreparable injury to plaintiff. (CPLft 6301.)
Defendant, in addition to opposing the motion for a preliminary injunction, has cross-moved to dismiss the action upon the statutory grounds that this court lacks jurisdiction of the subject matter of the cause of action, and that the complaint fails to state a cause of action. (CPLR 3211, subd. [a], pars. 2, 7.) In its papers, and by way of oral argument held before the court, the Telephone Company contends that primary or exclusive jurisdiction of plaintiff’s claims rests in the Public Service Commission, which, according to ‘£ tariffs ’ ’, or regulations, promulgated by that agency, forbids the installation of any device which interconnects with telephone equipment, unless a connecting arrangement is furnished, installed and maintained by the Telephone Company.
*496 The conference call device was purchased by plaintiff upon the open market for $69 and is used in conjunction with defendant’s telephonic equipment, to interconnect two or more persons to a single telephone conversation, or to forward a telephone call to another location without operator assistance,
In a letter dated April 11,1973, defendant’s manager informed plaintiff that the conference call arrangement connected to telephone company equipment was violative of “ the tariff ”, and referred plaintiff to P. S. C. No. 800 Telephone Tariff (§ 1, p, 3b) entitled, “ Violation of Regulations ”, which authorizes the Telephone Company to disconnect a subscriber’s telephone service upon a violation of the regulations; or “ Telephone Tariff ” provisions, enacted by the Public Service Commission. Defendant’s manager suggested that plaintiff contact the company from whom the conference call equipment was obtained, to determine the “ Telephone Company Connecting Arrangement required to attach your equipment to the Telephone Network ”, and that defendant will then have the appropriate “ Connecting Arrangement ” installed.
The “ Connecting Arrangement ” sought to be installed by the Telephone Company consists of a protective connection at $3.35 per month, with an installation charge of $20. Plaintiff argues that it has five lines, and that the total cost would be $100 for installation and $17 per month, for connecting a $69 device which already comes equipped with the necessary connecting attachment.
While it is conceded by the Telephone Company that plaintiff’s conference call device, or “ Tel-Com ” as it is known, does not generate power, it is stated in the affidavit of defendant’s general marketing engineer that the plaintiff’s “ Tel-Com ” was installed by someone who tampered with the Amphenol connectors, which are items of equipment installed by the Telephone Company, on plaintiff’s premises, formulating a direct electrical connection from plaintiff’s device to the telephone network of lines, and creating the potential hazard of interference with telephonic functioning. The affidavit of defendant’s engineer further sets forth the provisions of Public Service Commission Tariff No. 800-B. 1. 2. d., which, in effect, does permit the use of “ subscriber-provided terminal equipment or subscriber-provided communications systems ” involving “ direct electrical connection to the facilities furnished by the Telephone Company ” upon the condition that such subscriber-provided equipment .is connected through a “ connecting arrangement furnished, installed and, maintained by the Telephone Company,” ¡
*497 Defendant, in further support of its contentions, has provided the court with an abstract of New York Telephone Company, Case No. 25040 (9 N Y PSC 157 [1969]) which involves the initial proceedings conducted by the Public Service Commission, and consideration by it, as to the propriety of tariff filings made by the New York Telephone Company providing for access to the telephone network of customer-owned equipment. A study of these proceedings reveals that, during the course of hearings oh the issue, over 1,100 pages of testimony were taken. In support of its filings, the New York Telephone Company produced its general rate engineer and the engineering director of American Telephone and Telegraph Company, as witnesses. In opposition to the tariff there appeared a number of individuals representing telephone and computer equipment manufabturing firms and consumer organizations. In its deliberations, the commission considered the findings of a special task force appointed by. the Bell System to examine into regulations relating to the connection of “ customer-provided facilities ” with the telephone network. The conclusions of that task force were, that customers or subscribers should be permitted to connect their 6wn facilities to the telephone system, ‘ ‘ conditioned upon appropriate safeguards in the tariffs to protect the service to all customers and to assure protection to employees of the telephone companies and telephone facilities from hazardous, or harmful, conditions(Emphasis added.)
Essentially, three safeguards were proposed by the Telephone Company to protect the network from ‘ ‘ foreign ’ ’ interference by customer-owned equipment, and included in these safeguards was the requirement that there be a Telephone Company-furnished “ interface ” device, or coupler, to be interposed between the Telephone. Company equipment and the subscriber facilities. The proposed rates for installation and maintenance of a voice coupler were $20 for installation, and 50 cents per month for maintenance.
In reaching its own conclusions and recommendations, the commission discussed the landmark determination of the Federal Communications Commission, the so-called “ Carterfone ” decisions (13 F. C. C. 2d 420; 14 F. C. C. 2d 571; 15 F. C. C. 2d 605), which are apparently referred to and relied upon by plaintiff in its moving papers. The determination of the Federal Communications Commission in Carterfone was to the effect that the then, existing “ foreign attachments ” provisions in the American Telephone and Telegraph Company tariffs were unreasonable to the extent that they prohibited interconnection of all customer-provided equipment to the network, regardless *498 of whether that equipment was a potential source of harm or not. It is to be observed at this juncture, that the Telephone Company, by its own proposed tariff, upon which hearings were held and testimony given, intended to permit interconnection of customer-provided equipment, subject to installation and maintenance of an interface device by the Telephone Company, to avoid present or potential hazards. In allowing the tariff, the Public Service Commission observed: “ There can be no question but that the tariffs must provide for network protection criteria, when such tariffs also provide for the interconnection of customer-owned equipment to the network.” (9 N Y PSC 157, 167, supra).
Plaintiff makes no contention that its conference call device does not involve direct electrical connection to the facilities furnished by the Telephone Company. On the contrary, plaintiff states in its moving papers that the device “ installs into the telephone company’s usual coupling device.”
Plaintiff contends however, that its conference call device does not come under the tariffs of the Public Service Commission, and that it does not require the installation and maintenance of any interface equipment by the Telephone Company. It is upon these contentions that plaintiff grounds its motion for a preliminary injunction.
Earlier in this memorandum, the court referred to paragraph 2, subdivision d of Public Service Commission Tariff No. 800. It is clear from a reading of that section that defendant’s conference call device does come directly within the purview of the tariff provisions of the Public Service Commission, governing the connection of subscriber-provided communiehtion systems with the equipment of the Telephone Company.
As to plaintiff's contention that the conference call device presents no hazard to telecommunications as would require telephone company-installed and maintained coupler or interface equipment, it is merely plaintiff’s bald conclusion, unsupportéd by any acceptable proof. A plaintiff’s conclusions of fact, although proper in a pleading, are given little or no weight oh a motion for a preliminary injunction. (Jamaica Gas Light Co. v. Nixon, 110 Misc. 500, 503.) Moreover, plaintiff has failed to sustain its burden on the motion by demonstrating the necessity and urgency for the relief in advance of trial, since plaintiff need only suspend use of the conference cali device to avoid curtailment of its telephone service. (Allied-Crossroads Nuclear Corp. v. Atcor, Inc., 25 A D 2d 643, 644; Western N. Y. Motor Lines v. Rochester-Genesee Regional Transp. Auth., 72 Misc 2d 712.)
*499 Looking now to defendant’s cross motion to dismiss the complaint, the basic requirements for obtaining a judgment for a permanent injunction are the danger of irreparable injury unless such a judgment is entered, and the inadequacy of other remedies to afford just and equitable relief. It is not enough that a legal right is being violated or is threatened with violation, as there must also be some pressing or serious emergency or danger of loss. (12 Carmody-Wait 2d, New York Practice, § 78.102.)
As already said, one of the grounds upon which defendant moves to dismiss, is plaintiff’s failure to state a cause of action. The question posed in such a motion is not whether the plaintiff can prove its cause of action, but rather, whether „a cause of action is stated, and in testing the complaint, all of the allegations of fact must be assumed to be true, and the pleadings are deemed to allege whatever cause of action can be implied from the statements, by fair and reasonable intendment. (Jones v. County of Herkimer, 51 Misc 2d 130.)
Reading the complaint in this case most favorably and liberally, the court is of the opinion that the allegations do not spell out a valid cause of action for a permanent injunction against the New York Telephone Company.
Nowhere in the complaint is it alleged that defendant’s action in requiring the installation and maintenance by it of a connecting arrangement between plaintiff’s device and Telephone Company equipment is violative of the law (cf. O’Rourke v. Hutton, 249 App. Div. 697), and that plaintiff would suffer serious and irreparable harm by the installation of the defendant’s connecting arrangement, or that plaintiff would sustain irreparable harm should it be compelled to discontinue use of the conference call device, which is the real issue and subject matter of this action.
With respect to plaintiff’s averment that it has no adequate remedy at law, such a statement is held to be a mere conclusion, and is inadequate unless the facts alleged substantiate it. (Boro Wide Food Healers Assn. v. La Guardia, 44 N. Y. S. 2d 160.) The facts alleged in the complaint indicate that plaintiff has an administrative remedy by means of a complaint to the Public Service Commission, pursuant to the provisions of subdivision 1 of section 96 of the Public Service Law, which authorizes the commission to investigate any act done or emitted by a telephone company, and which requires the commission to investigate and make inquiry in regard to any such act or omission as is in violation of any provisions of law or in violation of any order of the commission. That plaintiff should have first *500 resorted to this administrative remedy, is mandated by the highly technical matters involved in the action and the .far reaching economic consequences stemming therefrom.
As stated in Matter of Earl Carrol Realty Corp. v. New York Edison Co. (141 Misc. 266, 272), quoted with approval in Matter of Leighton v. New York Tel. Co. (184 Misc. 827, 829), and in Meyerson v. New York Tel. Co. (65 Misc 2d 693, 696): “ Certainly sound policy would seem to dictate that courts should not interfere by summary adjudication or by the extraordinary remedy here sought, in matters highly technical in character and often far reaching in their economic consequences, until they have been considered and passed upon by the trained body established for that very purpose and especially equipped to examine into the intricate facts commonly involved in public utility problems.”
The temporary restraining order is vacated, the motion for a preliminary injunction denied, and the complaint is dismissed, without prejudice to plaintiff in first pursuing its administrative remedy as set forth in this memoraiidum, and without prejudice in commencing any available and appropriate action or proceeding with respect to. such determination by the Public Service Commission as may be made by it in this matter, if plaintiff be so advised.