OPINION OF THE COURT
Arnold Guy Fraiman, J.
Motion Nos. 85 and 86 on the calendar of February 4, 1981 are consolidated for disposition. This action for declaratory judgment and permanent injunction concerns New York City’s policy of limiting half-fare privileges on its mass transit system during nonpeak hours to the elderly who are residents of the city. Defendants are the New *765 York City Transit Authority, Manhattan and Bronx Surface Transit Operating Authority and Metropolitan Transportation Authority (the Authorities), and Mayor Koch and the City of New York. Plaintiffs, County of Westchester, Alfred Del Bello, County Executive, and Leonard Spano, a county legislator, seek a declaration that this policy is unlawful in that it denies similar benefits to elderly residents of Westchester County.
By Motion No. 86 the city and Mayor Koch move to dismiss the complaint pursuant to CPLR 3211 (subd [a], pars 3, 7). By Motion No. .85 the Authorities move for summary judgment pursuant to CPLR 3212. Plaintiffs cross-move for summary judgment.
The half-fare policy for elderly New York City residents was instituted on July 1,1969 pursuant to subdivision 7 of section 1203-a and subdivision 2 of section 1205 of the Public Authorities Law. These authorize the Authorities, upon the request of the Mayor, to permit reduced fares for one or more classes of users, provided the city agrees to assume the resulting differential in revenues. The policy has continued since 1969, and in calendar year 1980 the city paid the Authorities $13.8 million to subsidize the program.
Plaintiffs contend that the restriction of half-fare benefits to New York City residents violates the Urban Mass Transportation Act (US Code, tit 49, § 1601 et seq.) and the equal protection clause of the Fourteenth Amendment of the United States Constitution.
As a threshold issue, defendants contend that plaintiffs lack standing to commence the action because they have failed to show that they are aggrieved by the challenged policy. This contention is without merit. Plaintiffs premise their capacity to sue on section 109 of the Public Service Law, which provides that “[e]ach municipal corporation shall have the right to appear as a party before * * * any court in any action or proceeding involving rates, service or other matters affecting the municipal corporation or any of its residents.” Section 109 was enacted in 1933 when the Public Service Commission possessed jurisdiction over rates and services of all transit *766 systems within the State. Although the Authorities, created pursuant to the Public Authorities Law, now have jurisdiction and supervision over New York City’s mass transit facilities, it has been held that the provisions of the Public Authorities Law which divest the Public Service Commission of jurisdiction do not abolish the right of a municipal corporation pursuant to section 109 to appear before a court in an action involving rates affecting its residents. (Matter of County of Nassau v Metropolitan Transp. Auth., 57 Misc 2d 1025, affd 32 AD2d 647; County of Rensselaer v Capital Dist. Transp. Auth., 71 Misc 2d 428, revd on other grounds 42 AD2d 445.)
Nor is there any basis to limit a municipality’s standing pursuant to section 109 of the Public Service law, as defendants urge, to actions involving transit facilities operating within the municipality itself. The language of section 109 is expansive, granting standing before “any court in any action”, the only operative limitation being that the matter at issue must affect either the municipal corporation or “any of its residents”. While the court has no statistics at hand, the number of Westchester County residents who use the city’s mass transit facilities is obviously significant. Thus, the rates charged by the Authorities clearly affect that county’s residents, and plaintiffs accordingly have standing pursuant to section 109 to maintain the instant action.
Defendants’ contention that the issues raised in the complaint are nonjusticiable is also without merit. While courts refrain from judicial inquiry where questions of “broad legislative and administrative policy beyond the scope of judicial correction” are presented (Jones v Beame, 45 NY2d 402, 408), the instant challenge, asserting as it does that the policy of the Authorities violates both Federal statute and plaintiffs’ equal protection rights, presents issues appropriate for judicial determination and relief. (See Norwalk CORE v Norwalk Redevelopment Agency, 395 F2d 920, 929.)
We turn now to the issues raised by plaintiffs’ contention that denial of half-fare benefits on the city’s mass transit facilities to otherwise eligible Westchester County residents violates the provisions of the Urban Mass Transpor *767 tation Act (the Act) and regulations promulgated thereunder. Section 5 of the Act (88 US Stat 1567, US Code, tit 49, § 1604) authorizes the Secretary of Transportation to issue grants to local mass transit agencies to finance the acquisition and improvement of transit facilities and equipment and the payment of operating expenses. Subdivision (m) of section 1604 provides that the secretary shall not approve any project thereunder, “unless the applicant agrees and gives satisfactory assurances, in such manner and form as may be required by the Secretary and in accordance with such terms and conditions as the Secretary may prescribe”, that the fares charged elderly and handicapped riders during nonpeak hours will not be more than half the normal peak-hour fares.
Plaintiffs allege that pursuant to subdivision (m) of section 1604 the secretary has promulgated guidelines which provide that place of residence cannot be used as a basis to determine which elderly riders are entitled to half-fare rates, and that the Authorities, by restricting half-fare eligibility to residents of New York City, are acting in derogation of these guidelines. Defendants, while denying that they are violating the secretary’s guidelines, contend that plaintiffs do not have a private right of action to enforce the terms of section 5 of the Act or any guidelines promulgated thereunder.
Subdivision (d) of section 1608 of title 49 of the United States Code authorizes the Secretary of Transportation to initiate an action to require compliance with assurances made to it by a recipient of Federal funds in connection with its grant application. However, neither the Act itself nor applicable regulations under section 5 contains any express provision for a private right of action. It therefore must be determined whether a private right of action may be implied under the statute. Recent Supreme Court decisions indicate that the question whether a statute creates a private right of action by implication is “basically a matter of statutory construction” and that “what must *** be determined is whether Congress intended to create the private remedy asserted.” (Transamerica Mtge. Advisors v Lewis, 444 US 11, 15-16; Touche Ross & Co. v Redington, 442 US 560, 568.) It is apparent that Congress intended *768 subdivision (m) of section 1604 to benefit elderly and handicapped riders of mass transit facilities. Whether Congress intended that this provision would be enforced through private litigation, however, is a separate question.
No legislative history has been adduced by the parties on the question of congressional intent to confer a private cause of action, but the absence of such history is not necessarily inconsistent with congressional intent to make such a remedy available. “Such an intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment.” (Transamerica Mtge. Advisors v Lewis, supra, at p 18.)
Express identification of the class Congress intended to benefit is a factor in discerning congressional intent to infer a private remedy. But courts have distinguished statutes drafted to focus on the benefited class, i.e., title IX of the Education Amendments of 1972 (US Code, tit 20, § 1681, subd [a]), providing that “[n]o person in the United States shall, on the basis of sex, be excluded”, from those, as in the instant case, that act as a directive against the disbursement of public funds to agencies engaged in discriminatory conduct. In the latter case, the courts have indicated that there would be far less reason to infer a private remedy. (See Cannon v University of Chicago, 441 US 677, 690-693; Rogers v Frito-Lay, Inc., 611 F2d 1074, cert den 449 US 889; see, also, McDonald v Stockton Metropolitan Tr. Dist., 36 Cal App 3d 436.)
On the basis of all of the foregoing this court cannot conclude that the statutory language of subdivision (m) of section 1604 of title 49 of the United States Code fairly implies a private right of action on behalf of elderly and handicapped riders. It accordingly concludes that no such right exists and the motion to dismiss the complaint on this ground is granted.
This leaves for resolution whether the half-fare program violates the equal protection clause of the Constitution by discriminating against Westchester County residents. The Fourteenth Amendment permits the exercise by the States of wide discretion in enacting laws which affect some groups differently than others, and a statutory discrimination will not be set aside if any state of facts reasonably *769 may be conceived to justify it. (McGowan v Maryland, 366 US 420; Lighthouse Shores v Town of Islip, 41 NY2d 7.) Here there is ample justification for the limitation of half-fare benefits to New York City residents. Quite simply, the program is funded by the city from tax revenues derived from its residents. As previously indicated subdivision 2 of section 1205 of the Public Authorities Law requires the city to reimburse the Authorities for the differential in revenue resulting from the reduced fare program, and in fiscal year 1980 the city paid the Authorities $13.8 million to subsidize the program. Municipalities have been granted wide discretion in restricting the class of persons who may benefit from public facilities maintained through the taxation of its residents. (See People ex rel. Village of Larchmont v Gilbert, 137 NYS2d 389, affd 307 NY 773.) The restriction in the instant case is analogous to the practice of allowing State residents to attend State universities at reduced tuition, which has been upheld on the ground that residents and nonresidents do not have identical tax burdens. (See American Commuters Assn. v Levitt, 279 F Supp 40, affd 405 F2d 1148; Johns v Redeker, 406 F2d 878, cert den sub nom. Twist v Redeker, 396 US 853.)
For all the foregoing reasons defendants’ motions are granted and the complaint is dismissed.